[Civ. No. 23253. Fourth Dist., Div. Two. July 2, 1981.]

REGINALD D. DE LA CUESTA et al., Plaintiffs and Appellants, v.
FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION et
al., Defendants and Respondents.

ALPHONSO MOORE et al., Plaintiffs and Appellants, v.
FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION et
al., Defendants and Respondents.

JOHN D. WHITCOMBE, Plaintiff and Appellant, v.
FIDELITY FEDERAL SAVINGS AND LOAN ASSOCIATION et
al., Defendants and Respondents.

**COUNSEL**

Fred Crane, David M. Ramirez, Mark A. Hiller and Robert E. Boehmen for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Joseph M. O'Heron, Deputy Attorney General, Richard M. Mosk, W. Gary Kurtz, John R. Hetland, Charles A. Hansen and John W. Dumas as Amici Curiae on behalf of Plaintiffs and Appellants.

Hahn, Cazier & Leff, Andrew E. Katz, Steven G. Polard and Walter L. Blackwell III for Defendants and Respondents.

Henry L. Judy, Maud Mater, Gary S. Smuckler, Marilyn E. Nathanson and Mark C. Ellenberg as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**KAUFMAN, Acting P. J.—**

### INTRODUCTION

This is an appeal from summary judgment in favor of defendants in three cases consolidated in the trial court. Where appropriate, the cases will be referred to as the de la Cuesta case, the Moore case, and the Whitcombe case. Each action was commenced by the purchaser of property encumbered by a deed of trust seeking declaratory and injunctive relief against threatened foreclosure of the deed of trust by trustee's sale following the purported exercise of the trust deed's due-on-sale clause. The principal defendant in each action is the beneficiary named

in the deed of trust, Fidelity Federal Savings and Loan Association, and the defendants will be referred to collectively as Fidelity Federal. The plaintiffs made motions for summary judgment asserting that in the absence of any showing it was reasonably necessary to avoid impairment of the security or risk of default resulting from the sale, Fidelity Federal was precluded from exercising the due-on-sale clause by the California law as set forth in *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970]. The trial court granted Fidelity Federal's cross-motion for summary judgment on the ground that application of the state law is precluded by federal preemption.

The principal issues are whether the trial court correctly determined that application of the state law has been federally preempted and, in the Moore and Whitcombe cases, the effect of a provision in each deed of trust that it "shall be governed by the law of the jurisdiction in which the Property is located." A determination that there has been no federal preemption of the state law raises an additional issue in the de la Cuesta case as to whether or not the rule announced in *Wellenkamp* applies to commercial, income-producing property. We have concluded that application of the state law has not been federally preempted and that the *Wellenkamp* rule does preclude exercise of the due-on-sale clause in the deed of trust encumbering the commercial property involved in the de la Cuesta case. Accordingly, we reverse the judgment as to each case with directions to the trial court to enter summary judgment in favor of the plaintiffs.

On June 1, 1981, after oral argument and after unanimous agreement of the panel members as to the proper disposition of the issues and the appeal, but before the opinion could be prepared, Division One of the First Appellate District of the Court of Appeal filed its opinion in the case of *Panko v. Pan American Fed. Sav. & Loan Assn.* (1981) 119 Cal.App.3d 916 [174 Cal.Rptr. 240]. In that case in respect to the federal preemption issue the court reached conclusions identical to those reached by us, based on reasoning with which we agree. The reasons and conclusions were ably and succinctly stated in the *Panko* opinion, and it would serve no useful purpose for us to attempt to craft a wholly original opinion. On the other hand, inasmuch as the *Panko* decision is not yet final, it is inappropriate that we simply cite it as controlling authority. We have, therefore, resolved to adopt substantial portions of the language of the *Panko* opinion as our own with appropriate additions and deletions. To avoid the necessity of a multitude of quotes and inter-

nal quotes, we simply here state that the substantive portions (as opposed to the statement of fact and disposition) of part I of this opinion, including footnotes, are quoted from the *Panko* decision except for material enclosed in brackets, including footnotes, which we have added. Deletions from quotations from the *Panko* opinion, other than the deletion of the name of Pan American and the substitution therefor of Fidelity Federal, will be indicated by ellipses or other appropriate designation.

## I—THE MOORE CASE

A. *The Facts*

A fact common to all three cases is that Fidelity Federal is a private mutual savings and loan association chartered by the Federal Home Loan Bank Board pursuant to section 5(a) of the Home Owners' Loan Act of 1933 (12 U.S.C. §§ 1461-1468).

On February 22, 1978, Fidelity Federal made a loan of $58,800 to Paul M. and Debra J. Stitch secured by a deed of trust on their residential real property at 3109 Roosevelt Way, Costa Mesa, in the State of California. The deed of trust contained a due-on-sale clause purportedly giving Fidelity Federal the right to declare the unpaid balance of the loan immediately due and payable in the event the property was sold or otherwise transferred or conveyed by the borrowers.

The deed of trust also contained a provision identified as paragraph 15 stating that the deed of trust "shall be governed by the law of the jurisdiction in which the Property is located."[1]

On September 15, 1978, the Stitches sold and, by grant deed, transferred the property to plaintiffs Alfonso Moore and Alice Moore.

Having learned that the property had been sold and conveyed to the Moores, Fidelity Federal gave notice of its intention to exercise the

[1]In full the provision reads: "Uniform Deed of Trust; Governing Law; Severability. This form of deed of trust combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event any provision or clause of this Deed of Trust or Note conflicts with applicable law, such conflicts shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust and the Note are declared to be severable."]

due-on-sale clause in the deed of trust and on December 7, 1978, caused to be recorded a notice of default and election to sell under the deed of trust. Whereupon, the Moores instituted this action.

## B. *Federal Preemption*

### *Background*

In recent years the validity of due-on-sale clauses has been a matter of considerable controversy in state and federal courts. In California our Supreme Court has determined that enforcement of a due-on-sale clause upon occurrence of an outright sale constitutes an unreasonable restraint on alienation "unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." (*Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at p. 953.) The court's decision was grounded on Civil Code section 711,[3] ... [which, as interpreted, invalidates unreasonable restraints on the alienation of real property. (21 Cal.3d at p. 948.)]

Here, [Fidelity Federal makes no claim] ... of an impairment to its security or risk of default as a result of the outright sale of the property to plaintiffs. Consequently, under California law the due-on-sale clause contained in the deed of trust herein would not be enforceable. [Fn. omitted.] [Fidelity Federal] ... contends that it cannot be bound by California law since it is exclusively governed by regulations of the Federal Home Loan Bank Board (Board) which preempt conflicting state laws.

In 1933 the Home Owners' Loan Act [HOLA] (12 U.S.C. §§ 1461-1468) was enacted by Congress ... authorizing the establishment of federal savings and loan associations. While the associations are specifically empowered to extend real estate loans (12 U.S.C. § 1464(c)(1)(B) and (c)(2)(A)), the statute is silent with respect to due-on-sale clauses or other loan details.

The Board [created in 1932 by the Federal Home Loan Bank Act (12 U.S.C. §§ 1421-1449)] is statutorily authorized to promulgate regulations[5] ... ["to provide for the organization, incorporation, examina-

---

[3]Section 711 of the Civil Code provides: "Conditions restraining alienation, when repugnant to the interest created, are void."

[5]"In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized,

tion, operation, and regulation of" federal savings and loan associations. (12 U.S.C. § 1464(a)(1).] [From 1933 to June 8, 1976, the Board's regulations were silent with respect to due-on-sale clauses.][2] The first specific mention of due-on-sale clauses, ... [appears in] a regulation ... enacted [June 8, 1976, and] ... effective July 1, 1976, [purporting to restrict the exercise of due-on-sale clause in certain circumstances and] providing [in part] as follows: "An association *continues to have the power to include, as a matter of contract between it and the borrower*, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (g) of this section [restricting exercise of due-on-sale clauses] with respect to loans made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, exercise by the association of such option (hereafter called a due-on-sale clause) *shall be exclusively governed by the terms of the loan contract*, and all rights and remedies of the association and borrower *shall be fixed and governed by that contract.*" [Italics added.] (12 C.F.R. § 545.6-11(f), amended and recodified at § 545.8-3(f)(1980).)

The pivotal question to be decided is whether the federal regulation overrides state law embodied in California Civil Code section 711, as interpreted in *Wellenkamp*.

### Federal Preemption

■ The preemption doctrine arises under the supremacy clause of the federal Constitution which states: "This Constitution, and the [L]aws of the United States which shall be made in [P]ursuance thereof; ... shall be the supreme [L]aw of the [L]and; and the Judges in every State shall be bound thereby, any [T]hing in the Constitution or

under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', or 'Federal mutual savings banks' (but only in the case of institutions which, prior to conversion, were State mutual savings banks located in States which authorize the chartering of State mutual savings banks, provided such conversion is not in contravention of State law), and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." (12 U.S.C. § 1464,(a)(1).)

[2However, the Board has interpreted a 1948 regulation calling for provisions in the loan contract *"for full protection to the ...* association" as authorizing the use and automatic exercise of due-on-sale clauses and, indeed, as preempting state law. (See discussion *infra*.)]

[L]aws of any State to the [C]ontrary notwithstanding." (U.S. Const., art. VI, cl. 2.) But the enumerated powers of the federal government are expressly limited: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." (U.S. Const., Amend. X.) The United States Supreme Court has exhibited considerable restraint in finding federal preemption of state law by requiring either "such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] . . . evidence of a congressional design to preempt the field." (*Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 141 [10 L.Ed.2d 248, 256, 83 S.Ct. 1210]; accord *People* v. *Conklin* (1974) 12 Cal.3d 259, 264 [114 Cal.Rptr. 241, 522 P.2d 1049], app. dism. 419 U.S. 1064 [42 L.Ed.2d 661, 95 S.Ct. 652].)

With reference to congressional intent, the United States Supreme Court has declared that a state regulation exercising the state's "historic police powers" is not displaced by federal law "unless that was the clear and manifest purpose of Congress." (*Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519, 525 [51 L.Ed.2d 604, 613-614, 97 S.Ct. 1305]; *Rice* v. *Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230 [see also *New York Dept. of Social Services* v. *Dublino* (1973) 413 U.S. 405, 413-415 (37 L.Ed.2d 688, 695-696, 93 S.Ct. 2507)].) Counsel have not . . . [pointed out nor have we discovered] evidence of a clear congressional mandate that federal [rather than state] law shall control the . . . [determination as to whether the exercise within a state by a federally chartered savings and loan of a due-on-sale clause in the absence of any impairment or threat of impairment to its security is invalid as an unreasonable restraint on the alienation]. While the Congress [in HOLA] has unequivocally expressed its preemptive design in relation to specific areas of savings and loan association activities,[6] . . . [HOLA] makes no reference to the subject of due-on-sale clauses.

[Invoking the somewhat discredited "occupation of the field" doctrine (see *Derenco, Inc.* v. *Benj. Franklin Fed. Sav. & Loan Ass'n* (1978) 281 Ore. 533 [577 P.2d 477, 484]; see also *New York Dept. of Social Services* v. *Dublino, supra*, 413 U.S. at pp. 413-415 [37 L.Ed.2d at pp. 695-696, 93 S.Ct. 2507]; see generally O'Connell, *The Due-On-*

---

[6]The Home Owners' Loan Act specifically provides that federal savings and loan associations are exempt from state limitations on the number of branch offices (12 U.S.C. § 1464(a)(1)); however, associations which were formerly state chartered banks are not exempt from more stringent state laws on neighborhood discrimination or consumer credit protection. (*Ibid.*) Further, federal savings and loan associations are exempt from state taxation greater than that imposed on local financing institutions. (*Id.*, at § 1464(h).)

*Sale Clause in Florida: A Potential Battleground for Borrowers and Lenders* (1979) 31 Fla. L.Rev. 933, 957-959), defendants emphasize the broad delegation of authority from Congress to the Board found in section 5(a) of HOLA (12 U.S.C. § 1464(a)(1)) to promulgate rules and regulations "to provide for the organization, incorporation, examination, operation and regulation of associations" (see fn. 5, *ante*). But this mistakes the plenary authority of the Board to regulate and control federal savings and loan associations (see, e.g., *Conference of Federal Sav. & Loan Ass'ns* v. *Stein* (9th Cir. 1979) 604 F.2d 1256, 1257-1258, 1260, affd. (1980) 445 U.S. 921 [63 L.Ed.2d 754, 100 S.Ct. 1304]; *Kupiec* v. *Republic Federal Savings & Loan Ass'n* (7th Cir. 1975) 512 F.2d 147, 150; *Glendale Fed. Sav. & Loan Ass'n* v. *Fox* (C.D. Cal. 1978) 459 F.Supp. 903, 909, judgment entered (1979) 481 F.Supp. 616, app. pending 9th Cir.); *Rettig* v. *Arlington Hgts. Fed. Sav. & Loan Ass'n* (N.D.Ill. 1975) 405 F.Supp. 819, 823), which no one questions, with the intent of Congress to supplant the laws of all 50 states pertaining to real property and mortgages, areas of fundamental state concern traditionally governed exclusively by state law. (See, e.g., *State Land Bd.* v. *Corvallis Sand & Gravel Co.* (1977) 429 U.S. 363, 378-379 [50 L.Ed.2d 550, 563, 97 S.Ct. 582]; *United States* v. *Little Lake Misere L. Co.* (1973) 412 U.S. 580, 591-592 [37 L.Ed.2d 187, 196, 93 S.Ct. 2389].) It is one thing to say that Congress has given the Board plenary authority to regulate federally chartered savings and loan associations. It is another thing entirely to say that by virtue of its federal charter, a federal savings and loan association is not required to abide by the state law of real property and mortgages in the state in which it does business.[3]

[Moreover, the occupation of the field argument overlooks both a fundamental problem that would exist were the argument accepted and the historical use of and compliance with state law of real property and mortgages by federal savings and loan associations. When federal preemption is declared on the basis of "occupation of the field," no state law pertaining to the "field" is applicable, whether or not it conflicts with the federal law. (*Meyers* v. *Beverly Hills Federal Savings & Loan Ass'n* (9th Cir. 1974) 499 F.2d 1145, 1146; *Glendale Fed. Sav. & Loan Ass'n* v. *Fox, supra*, 459 F.Supp. at p. 907; *Derenco, Inc.* v. *Benj.*

---

[3]Usually federal savings and loan associations do business wholly within one state. (See 12 C.F.R. § 545.6-6, amended and recodified as § 545.8-6.) There are about 10 savings and loan associations which, by reason of their preexisting status upon conversion, have branches outside their home state. (Hearing before the House Com. on Banking, Finance and Urban Affairs on H.R. No. 3864, 96th Cong., 1st Sess., at p. 163 (1979).)]

*Franklin Fed. Sav. & Loan Ass'n, supra,* 577 P.2d at p. 484.) But federal savings and loan associations have always used and been governed by state real property and mortgage law in respect to such matters as title, conveyancing, recording, priority of liens, proceedings for foreclosure, and deficiency judgments. (See, e.g., *In re Wilton-Maxfield Management Co.* (9th Cir. 1941) 117 F.2d 913 [antideficiency statute]; *Federal National Mortgage Association* v. *Kostrunek* (S.D. Iowa 1964) 228 F.Supp. 777 [methods of foreclosure and right of redemption]; *Tahoe Highlander* v. *Westside Fed. Sav. & L.* (1979) 95 Nev. 8 [588 P.2d 1022] [antideficiency law]; *Benj. Franklin Federal S. & L. Ass'n* v. *Almond* (1978) 282 Ore. 303 [577 P.2d 937] [prior decree no bar to foreclosure suit]; *Caudle* v. *First Federal Sav. & L. Ass'n of Sylacauga* (1976) 295 Ala. 409 [327 So.2d 911] [statutory right of redemption]; *Minn. Fed. Sav.* v. *Cent. Enter. of Superior* (1976) 311 Minn. 46 [247 N.W.2d 46]; *Hartford Federal Savings and Loan Ass'n* v. *Lenczyk* (1966) 153 Conn. 457 [217 A.2d 694] [antideficiency law]; *Apex Siding & Roof. Co.* v. *First Federal Sav. & L. Ass'n* (Okla. 1956) 301 P.2d 352 [equitable estoppel to assert priority]; *Anatole Caron, Inc.* v. *Manchester Federal Sav. & L. Ass'n* (1940) 90 N.H. 560 [10 A.2d 668] [mechanic's lien law]; *First Federal Savings & L. Ass'n of Martin Cty.* v. *Ott* (Fla.App. 1973) 285 So.2d 695, cert. den. (Fla. 1974) 291 So.2d 10 [constructive notice]; *Home Fed. Sav. & L. Ass'n* v. *Four Star Heights, Inc.* (1971) 70 Misc.2d 118 [333 N.Y.S.2d 334] [mechanic's lien law]; *Penn Federal Savings and Loan Ass'n* v. *Joyce* (1962) 75 N.J.Super. 275 [183 A.2d 114] [statutory and equitable rights of redemption]; *Kankakee Federal Sav. & L. Ass'n* v. *Arnove* (1943) 318 Ill.App. 261 [47 N.E.2d 874] [priority and subordination agreement]; *First Fed. Sav. & L. Ass'n* v. *Green-Acres Bldg. Corp.* (1963) 38 Misc.2d 149 [236 N.Y.S.2d 1009] [priority of lien under future advances clause].) In the event of a foreclosure, a federal savings and loan association would undoubtedly also be subject to state law in obtaining possession of the property. And it can hardly be otherwise, for there is no federal common law of mortgages or real property. (See *Kirkland* v. *Fidelity Federal Sav. & Loan Ass'n of Jacksonville* (M.D.Fla. 1980) Civ. No. 79-859; see also *Hoopeston Co.* v. *Cullen* (1943) 318 U.S. 313, 318 [87 L.Ed. 777, 783, 63 S.Ct. 602, 145 A.L.R. 1113].)

[The *Wellenkamp* decision, of course, was based on California Civil Code section 711, the source of California law on the validity of restraints against alienation of real property (see *Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at pp. 948, 949; *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 316 [38 Cal.Rptr. 505, 392 P.2d 265], overruled

to the extent inconsistent on another point in *Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at p. 953), and is part of the California law of real property and mortgages.

[We consider next the contention that the Board in its regulations and rulings has expressly preempted application of the state law.

[Notwithstanding that its regulations had not theretofore mentioned due-on-sale clauses, on July 30, 1975, by resolution number 75-647 in the form of an advisory opinion rendered at the request of the court in a case entitled *Eric R. Schott, et al.* v. *Mission Federal Savings and Loan Association, et al.* in the United States District Court for the Central District of California (case No. CIV-75-366 WMB) the Board interpreted the "full protection" language in a regulation in effect since 1948 "as authorizing 'due on sale' clauses for Federal associations (regardless of any State law to the contrary) because, ... such clauses 'provide for full protection to the Federal association.'" (Advisory opinion, p. 15.) As stated by the Supreme Court of Minnesota in its opinion filed April 3, 1981, in *Holiday Acres* v. *Midwest Fed. Sav. & Loan Ass'n.*: "We reject [defendants'] argument that state regulation of the exercise of due-on-sale clauses was preempted prior to 1976 by [the] regulation which states, 'Loan instruments shall ... provide for full protection to the Federal association.' 12 C.F.R. § 545.8-3(a). This language, in the context of the regulation cited, refers to insurance, taxes, assessments, repairs, and other factors enumerated in that section." (308 N.W.2d 471, 477)[4] Moreover, there is no conflict whatever between the "full protection" regulation and the California law. California law does not invalidate all exercises of due-on-sale clauses; only unreasonable restraints on alienation are held invalid (*Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at p. 948; *La Sala* v. *American Sav. & Loan Assn* (1971) 5 Cal.3d 864, 878-879 [97 Cal.Rptr. 849, 489 P.2d 1113]); the exercise of a due-on-sale clause is permitted when "the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." (*Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at p. 953, fn. omitted.)

[4]12 Code of Federal Regulations section 545.6-11, amended and recodified as section 545.8-3 (1980), reads in pertinent part: "(a) *Required and authorized provisions.* Each loan shall be evidenced by note, bond or other instrument and be secured by a security instrument which is consistent with sound lending practices. Loan instruments shall comply with applicable provisions of law, governmental rules and regulations, and the association's charter and bylaws, and provide for full protection to the Federal asso-

[While involved in litigation with officials of the State of California concerning the exercise by federal savings and loan associations of due-on-sale clauses, the Board on June 8, 1976, promulgated its due-on-sale clause regulation. (12 C.F.R. § 545.6-11(f), amended and recodified as § 545.8-3(f) (1980)) (See text following fn. [2], *ante.*) Although the regulation itself expressly states that "exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract," in a preamble accompanying the regulation the Board stated: "Finally, it was and is the Board's intent to have . . . due-on-sale practices of Federal associations governed exclusively by Federal law. Therefore, . . . exercise of due-on-sale clauses by Federal associations shall be governed and controlled solely by § 545.6-11 and the Board's new Statement of Policy. Federal associations shall not be bound by or subject to any conflicting State law which imposes different . . . due-on-sale requirements, nor shall Federal associations attempt to . . . avoid the limitations on the exercise of due-on-sale clauses delineated in § 545.6-11(g) on the ground that such . . . avoidance of limitations is permissible under State law." (Preamble to 12 C.F.R. § 545.6-11, 41 Fed. Reg. 18287 (May 3, 1976).)]

[Thus it] is clear that the *Board* has manifested *its* unqualified intention that the adopted regulations and implementing policy relating to due-on-sale clauses shall occupy a preemptive position over conflicting state law provisions. [Italics added; fn. omitted.] Such expression of administrative intent was found controlling in *Glendale Fed. Sav. & Loan Ass'n* v. *Fox*, [*supra*, 459 F.Supp. at pp. 909-910)]. But we cannot equate the *Board's* expression of intent with the requisite *congressional* intent [italics added] since the ultimate question to be answered is "whether *Congress* has . . . ordained that the state regulation shall yield." (*Florida Avocado Growers* v. *Paul, supra*, 373 U.S. at p. 146 [10 L.Ed.2d at p. 259]; italics added; [accord: *New York Dept. of Social Services* v. *Dublino, supra*, 413 U.S. at pp. 413-418 [37 L.Ed.2d at pp. 695-697]; *Katherine Gibbs Sch. (Inc.)* v. *F.T.C.* (2d Cir. 1979) 612 F.2d 658, 667, rehg. den. 628 F.2d 755].) [The decision whether to dis-

---

ciation. They shall be recorded and, among other protections, *shall provide specifically for full protection with respect to insurance, taxes, assessments, other governmental levies, maintenance, and repairs.* They may provide for an assignment of rents. *The association may pay taxes, assessments, insurance premiums, and other similar charges for protection of its interest in the security property. . . .*" (Italics added.)]

place state law is a fundamental one going to the very fabric of federalism; thus, the decision is one to be made by the people through their elected representatives in Congress rather than by agencies or tribunals insulated from democratic pressures. (Cf. *Milwaukee* v. *Illinois* (1981) 451 U.S. 304, 309-313, [68 L.Ed.2d 114, 121-123, 101 S.Ct. 1784]; *Katherine Gibbs Sch. (Inc.)* v. *F.T.C., supra.*)]

But despite the lack of express congressional design, federal law by implication may operate to the exclusion of state law "where compliance with both federal and state regulations is a physical impossibility" or where there is an "impossibility of dual compliance . . . resulting in . . . an inevitable collision between the two schemes of regulation, . . ." (*Florida Avocado Growers* v. *Paul, supra*, 373 U.S. at pp. 142-143 [10 L.Ed.2d at p. 257].)

In an early case a federal district court—confronted with the question whether a federally chartered savings and loan association was required to obtain a state certificate to transact business in the state—held in favor of federal preemption reasoning that: "The [Home Loan Bank] Board has adopted comprehensive rules and regulations concerning the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." (*People, etc.* v. *Coast Federal Sav. & Loan Ass'n* (S.D.Cal. 1951) 98 F.Supp. 311, 316.) This broad declaration of lifetime supremacy has been cited with approval in a number of subsequent decisions uniformly holding that state law may not regulate [federal savings and loan associations] or otherwise interfere with . . . [their] internal affairs . . . . (See e.g. *Conference of Federal Sav. & Loan Ass'ns* v. *Stein* [*supra*] 604 F.2d 1256, . . . [proceedings for credit discrimination]; *Kupiec* v. *Republic Federal Savings & Loan Ass'n* [*supra*] 512 F.2d [at p.] 150 [use of membership records]; *Meyers* v. *Beverly Hills Federal Savings & Loan Ass'n* [*supra*] 499 F.2d [at p.] 1147 [prepayment penalties]; *Rettig* v. *Arlington Hghts. Fed. Sav. & Loan Ass'n* [*supra*] 405 F.Supp. [at p.] 823 [fiduciary obligations of directors and officers]; *City Federal Savings & Loan Ass'n* v. *Crowley* (E.D. Wis. 1975) 393 F.Supp. 644, 655 [fees received by directors and officers]; *Kaski* v. *First Fed. S & L Ass'n of Madison* (1976) 72 Wis.2d 132 [240 N.W.2d 367] [interest rate escalation]; *Sears* v. *First Federal Savings and L. Ass'n of Chicago* (1971) 1 Ill.App.3d 621 [275 N.E.2d 300] [trust accounts for taxes and insurance]; see also *Derenco, Inc.* v. *Benj. Franklin Fed. Sav. & Loan Ass'n*

[*supra*] 281 Ore. 533 [577 P.2d 477], cert. den. 439 U.S. 1051 [58 L.Ed.2d 712, 99 S.Ct. 733].) [Bracketed descriptions in the original.]

Although that general proposition reflects a correct statement of law, we are not persuaded that existing state law pertaining to the exercise of due-on-sale clauses in any way infringes upon or is otherwise incompatible with the Board's regulation or ... [control] of ... federal savings and loan associations. (See *Holiday Acres* v. *Midwest Fed. Sav. & Loan Ass'n* (Minn. 1981) 308 N.W.2d 471.) [Every substantive rule of state property and mortgage law has the potential for impinging upon federal savings and loan associations, but they are not thereby invalidated as "regulations" of the associations. As previously observed, the *Wellenkamp* rule is a substantive rule of California property and mortgage law. It is not directed at "regulating" and it is not a "regulation" of savings and loan associations as were the state law or state actions in *Conference of Federal Sav. & Loan Ass'ns* v. *Stein, supra,* 604 F.2d 1256, and *Glendale Fed. Sav. & Loan Ass'n* v. *Fox, supra,* 459 F.Supp. 903.]

[¶] The federal regulation merely authorizes and does not compel savings and loan associations to include a due-on-sale clause in their loan contracts and to exercise their rights thereunder. (*Holiday Acres* v. *Midwest Fed. Sav. & Loan Ass'n, supra.*) [P. 338.] As noted, California law ... [permits enforcement of] a due-on-sale clause only upon a showing that the lender's security will be either impaired or subjected to risk of default as a consequence of the transfer. But the federal loan association is not faced with physical impossibility in complying with the two regulatory schemes. Instead, the federal regulation leaves the rights and remedies of the parties intact under the terms of the loan contract. Thus, enforcement of the due-on-sale clause rests upon conventional contract and property principles under state law. (*Id.,* at p. 10.) There is no "inevitable collision" between the two regulations. (*Florida Avocado Growers* v. *Paul, supra,* at p. 143 [10 L.Ed.2d at p. 257] [cf. *Derenco, Inc.* v. *Benj. Franklin Fed. Sav. & Loan Ass'n, supra,* 577 P.2d at pp. 483-484].)

The Federal Home Loan Mortgage Corporation (FHLMC), appearing as amicus curiae, urges a finding of federal preemption based on a claim of need for national uniformity of loan practices and instruments.[9] In response, we rely upon the persuasive language of the

[9]Briefly stated, the argument is made that due-on-sale clauses, by keeping the life of a mortgage relatively short, increase the lenders' yield and thereby promote the nation-

Minnesota Supreme Court: "If this national interest were indeed an important policy, it seems that the inclusion of such clauses would be mandated rather than permitted." (*Holiday Acres* v. *Midwest Fed. Sav. & Loan Ass'n, supra*, p. 338.) Nor, we think, would application of state law to the exercise of due-on-sale clauses interfere with the federal objectives embodied in the Home Owners' Loan Act. That legislation was enacted during a period of severe economic depression in order to assist financially distressed homeowners. It would be "unreasonable, and ironic, to hold now that the Congress intended [the act] to justify the removal of homeowners' protections under state law." (*Id.*, at p. 339.)

Our conclusion finds further support in the particular provisions of the deed of trust employed herein. The form of instrument is apparently one promulgated by the FHLMC itself; its use is a precondition to purchase of the mortgage by FHLMC. The trust instrument contains so-called "uniform" and "nonuniform" covenants. The uniform covenants are intended for nationwide use while the nonuniform covenants are tailored to particular state mortgage requirements. [Fn. omitted.] For example, the "nonuniform" covenants employed herein include California statutory requirements regarding notice (Civ. Code, § [2924b,]) reinstatement (Civ. Code, § [2924c]) and the furnishing of a statement of obligation (Civ. Code, § 2943).

Included in the "uniform" covenants found in paragraph 15 [of the deed of trust] is the express proviso that: "[This form of deed of trust combines uniform covenants for national use and non-uniform covenants with limited variations *by jurisdiction* .... ] *This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Deed of Trust or Note *conflicts with applicable law* [italics added], such conflict shall not affect other provisions .... " (Italics added.) We believe such language expresses an unmistakable intention that state law shall govern the interpretation, validity and enforcement of the loan-security instrument.

[Defendants and amicus Federal Home Loan Mortgage Corporation contend that the law of a state includes all federal law the state is re-

al interest by keeping overall interest rates down. Further, by providing a higher yield and a rapid return of capital to the lenders, due-on-sale clauses render the loans marketable in the secondary mortgage market, thereby attracting new funds to the mortgage market and, in turn, again keeping interest rates down. FHLMC, as purchaser of conventional mortgages, will purchase only those mortgages using the standardized FHLMC/FNMA loan instrument employed here.

quired to enforce, by preemption or otherwise, so that the provision in paragraph 15 that the deed of trust shall be governed by the law of the jurisdiction in which the property is located has reference to both the state and federal law enforceable in that jurisdiction and that, inasmuch as the state law of California in respect to the exercise of due-on-sale clauses is preempted by the Board's regulation, the paragraph 15 provision is of no real significance in this case. Not so.

[Of course, reference to state law in some contexts may include reference to the federal law enforceable in the state, but to accept that interpretation here would entirely overlook the next sentence in paragraph 15 referring to a possible conflict of provisions or clauses of the deed of trust "with applicable law." If defendants and amicus were said to be correct that state law has been preempted by federal occupation of the field, there would be no "applicable law" other than the federal law and therefore no provision or clause of the deed of trust could be in conflict "with [the] applicable law." The same nonsensical result would flow from a holding that the "full protection" regulation preempts state law. Virtually every clause and provision in the deed of trust is for the "protection" of the association, and if state law were as a consequence preempted, there would be no "applicable law" with which any clause or provision could be in conflict.

[Thus, we are confirmed in our conclusion that paragraph 15 means just what it seems to say, that the law of California governs the validity and interpretation of deeds of trust on California property. Even if the matter were in doubt, the meaning of the provision would at least be ambiguous and uncertain, and the ambiguity and uncertainty would be construed against Fidelity Federal, the party responsible for it. (Civ. Code, § 1654; *Hibernia Sav. & Loan Soc.* v. *Lauffer* (1940) 41 Cal. App.2d 725, 731 [107 Cal.Rptr. 494]; *Bituminous Casualty Corporation* v. *Lynn* (6th Cir. 1974) 503 F.2d 636, 640-641; *Kenneth Reed Construction Corp.* v. *United States* (1973) 475 F.2d 583, 588 [201 Ct.Cl. 282].)]

In conclusion, we hold that California law is not preempted by virtue of the relevant federal regulation. . . .

C. *Disposition*

As to the Moore case (Super. Ct. No. 306349), the judgment is reversed with directions to render summary judgment in favor of the plaintiffs.

## II—THE WHITCOMBE CASE

### A. *The Facts*

On July 17, 1972, Fidelity Federal made a loan of $29,200 to Carter and Irene R. Wood secured by a deed of trust on their residential real property at 7392 Natal Drive, Westminster, in the State of California. The deed of trust contained a due-on-sale clause purportedly giving Fidelity Federal the right to declare the unpaid balance of the loan immediately due and payable in the event the property was sold or otherwise transferred or conveyed by the borrowers. The deed of trust also contained a provision stating that the deed of trust "shall be governed by the law of the jurisdiction in which the Property is located." (See full text of the provision set forth in bracketed fn. 1, *ante.*)

On November 9, 1978, the Woods sold and, by grant deed, transferred the property to plaintiff John D. Whitcombe.

Having learned that the property had been sold and conveyed to Whitcombe, Fidelity Federal gave notice of its intention to exercise the due-on-sale clause in the deed of trust and on December 29, 1978, caused to be recorded a notice of default and election to sell under the deed of trust. Whereupon, Whitcombe instituted suit.

### B. *Federal Preemption*

The principles discussed under the heading "Federal Preemption" in the Moore case are fully applicable to this case. In fact, they apply a fortiori here, because the deed of trust in this case was executed July 17, 1972, years before the Board's promulgation of its due-on-sale regulation on June 8, 1976, which expressly indicates that it is not applicable to security instruments executed prior to that date. As indicated in our discussion of the preemption issue in the Moore case, the contention that state law was theretofore preempted by the "full protection" regulation is devoid of merit.

Accordingly, we hereby incorporate as though fully set forth our discussion of the federal preemption issue in section IB of this opinion, and we conclude that the *Wellenkamp* rule is applicable.

## C. *Disposition*

As to the Whitcombe case (Super.Ct. No. 308527), the judgment is reversed with directions to render summary judgment in favor of the plaintiff.

### III—THE DE LA CUESTA CASE

## A. *Facts*

On January 18, 1971, Fidelity Federal made a loan of $105,000 to Howard G. and Ellen Mae Trabant secured by a deed of trust on what we are told is commercial property at 19462-19488 Beach Boulevard, Huntington Beach, in the State of California. The deed of trust contained a due-on-sale clause purportedly giving Fidelity Federal the right to declare the unpaid balance of the loan immediately due and payable in the event the property was sold or otherwise transferred or conveyed by the borrowers.

On October 25, 1977, the Trabants sold and, by grant deed, transferred the property to plaintiffs Reginald de la Cuesta and Margaret de la Cuesta.

Having learned that the property had been sold and conveyed to the de la Cuestas, Fidelity Federal gave notice of its intention to exercise the due-on-sale clause in the deed of trust and on December 7, 1978, caused to be recorded a notice of default and election to sell under the deed of trust. Whereupon, the de la Cuestas instituted this action.

## B. *Federal Preemption*

The principles set forth in our discussion of federal preemption in the Moore case are fully applicable to this case also. In fact, again, they apply a fortiori in this case because the Trabant deed of trust was executed January 18, 1971, many years prior to promulgation by the Board of its due-on-sale regulation on June 8, 1976, and, as indicated in our discussion in the Moore case, the contention that state law was theretofore preempted by the "full protection" regulation is devoid of merit.

We recognize that the deed of trust here involved does not contain a provision such as that found in the other two deeds of trust to the effect

that it shall be governed by the law of the jurisdiction in which the property is situated. However, our conclusion in the Moore case was not based so much on an agreement between the parties for the application of state law as on the conclusion that the general use of a provision containing such language by federal savings and loan associations with the approval of the Board persuasively evidences a recognition by the Board and federal savings and loan associations that state law would govern the interpretation, validity and enforcement of security instruments. Thus, the absence of the special provision in the particular trust deed, here, is of no great significance to our resolution of the preemption issue.

Accordingly, with the exception of those portions relating directly to the special provision in the Moore deed of trust, we hereby incorporate as though fully set forth our discussion of the preemption issue under section IB of this opinion and conclude that application of the state law has not been federally preempted.

C. *The Commercial Property Problem*

There is nothing in the pleadings and virtually nothing in the declarations in support of the motions for summary judgment that discloses the precise nature of the property encumbered by the deed of trust in this case. One document indicates that it is "commercial" and "income producing." Otherwise we are in the dark.

Defendants assert that there are a number of differences between owner-occupied residential property and income-producing, commercial property from which defendants conclude that the rule in *Wellenkamp* ought not to be applied to a deed of trust on commercial property. They assert that owners of commercial property have the ability to raise rents or prices of manufactured goods; that an owner of commercial property is less likely than a homeowner to be compelled to transfer the property at a time of "tight" money; that buyers of commercial property are not normally compelled to purchase at a time of "tight" money; and that commercial buyers carefully weigh business and tax advantages, whereas residential buyers do not.

We are aware, of course, that in *Holiday Acres* v. *Midwest Fed. Sav. & Loan Ass'n, supra*, 308 N.W.2d 471 at page 484, the Minnesota Supreme Court was impressed with some such differences in concluding

that automatic exercise of a due-on-sale clause in a security instrument used to finance residential investment property was not impermissible. However, the declarations in support of the motions for summary judgment in the case at bench contain no competent evidence to establish the factual distinctions asserted by defendants, and we are unable and unwilling to take judicial notice of them. Moreover, it seems to us that at least the last of the differences asserted by defendants argues as well for application of the *Wellenkamp* rule as against its application.

Defendants also call to our attention that the property involved in *Wellenkamp* was apparently not commercial property and that the court in the *Wellenkamp* decision mentioned the preferred status under California law of a homeowner's equity. (21 Cal.3d at p. 950, fn. 6.) That is true, but the *Wellenkamp* court did not even specifically mention that the property in that case was residential, much less differentiate in its language between commercial and residential properties. The court consistently used generic phraseology such as "a parcel of real property," "real property" and "real estate loans." (See, e.g., 21 Cal.3d at pp. 946, 947, 949, 950, 951, 953 and 954.)

The basis for decision was that exercise of a due-on-sale clause in the absence of any threat of impairment to the security or risk of default resulting from the sale or transfer constitutes an unreasonable restraint on alienation. Going to the heart of the decision was the following language of the court: "Economic risks such as those caused by an inflationary economy are among the general risks inherent in every lending transaction. They are neither unforeseeable nor unforeseen. Lenders who provide funds for long-term real estate loans should and do, as a matter of business necessity, take into account their projections of future economic conditions when they initially determine the rate of payment and the interest on these long-term loans. [Citation.] Unfortunately, these projections occasionally prove to be inaccurate. We believe, however, that it would be unjust to place the burden of the lender's mistaken economic projections on property owners exercising their right to freely alienate their property through the automatic enforcement of a due-on clause by the lender." (*Id.*, at pp. 952-953, fn. omitted.) There is no suggestion in the court's language that its reasoning would have been different had the encumbered property been commercial rather than residential property. We also note that *Tucker v. Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169], upon which the *Wellenkamp* court heavily relied, involved a house used as residential investment property. (*Id.*, at p. 633.)

In fine, if there are circumstances in which the *Wellenkamp* rule should not be applied because of the commercial nature of the encumbered property, they have not been made to appear in this case, and we see no reason the *Wellenkamp* rule should be inapplicable in the circumstances here shown.

### D. *Disposition*

As to the de la Cuesta case (Super.Ct.No. 286474) the judgment is reversed with directions to the trial court to enter summary judgment in favor of the plaintiffs.

McDaniel, J., and Morris, J., concurred.

A petition for a rehearing was denied July 22, 1981, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied August 26, 1981. Mosk, J., did not participate therein.