First Federal Savings and Loan Association of Puerto Rico, recurrente, *v.* El Registrador de la Propiedad de Caguas, Sección Primera, recurrido; Pan American Federal Savings and Loan Association of Puerto Rico, recurrente, *v.* El Registrador de la Propiedad de Caguas, Sección Primera, recurrido.

*Números:* O-81-482, O-81-489    *Resueltos:* 16 de febrero de 1983

PER CURIAM: Se trata de dos recursos gubernativos presentados por Pan American Federal Savings and Loan Association of Puerto Rico y First Federal Savings and Loan Association of Puerto Rico contra la negativa del Registrador de la Propiedad, sección primera de Caguas, de inscribir una cláusula de aceleración de la deuda, incluida en ciertas escrituras de constitución de hipoteca. Hemos consolidado ambos recursos porque plantean cuestiones comunes de hechos y de Derecho. La reciente decisión del Tribunal Supremo federal —*Fidelity Federal Sav. & Loan Assn.* v. *De la Cuesta*, 458 U.S. 141 (1982)— aplica a los hechos ante nos y nos obliga a revocar las notas recurridas.

La referida cláusula de aceleración dice así:

Si toda o parte de la Propiedad, o un interés en la misma, es vendido o transferido por el Deudor sin el consentimiento previo por escrito del Prestador, excluyendo (a) la creación de una carga o gravamen subordinada a esta Hipoteca, (b) la creación de una garantía del precio de compraventa de enseres del hogar, (c) una transferencia por legado o herencia, o (d) la concesión de un derecho de arrendamiento de tres años o menos que no contenga una opción de compra, el Prestador podrá, a opción del Prestador, declarar todas las sumas aseguradas por esta Hipoteca inmediatamente vencidas y pagaderas. El Prestador habrá renunciado tal derecho de aceleración si, antes de la venta o transferencia, el Prestador y la persona a quien la Propiedad ha de ser vendida o transferida llegan a un acuerdo por escrito a efectos de que el crédito de dicha persona es satisfactorio al Prestador y de que el interés pagadero sobre las sumas aseguradas por esta Hipoteca será el tipo que requiera el Prestador. La renuncia por el Prestador a la opción de aceleración dispuesta en este párrafo 17 no será interpretada como un relevo de las obligaciones del Deudor bajo esta Hipoteca y el Pagaré.

Si el Prestador ejerce dicha opción de aceleración, el Prestador enviará por correo al Deudor notificación de acele-

ración de acuerdo con las disposiciones del párrafo 14 de la presente. Dicha notificación concederá un período de no menos de treinta (30) días a partir de la fecha de envío por correo de la notificación durante el cual el Deudor podrá pagar las sumas declaradas vencidas. Si el Deudor dejare de pagar dichas sumas antes de la expiración de dicho período, el Prestador podrá, sin necesidad de notificación o requerimiento adicional al Presta[tario], invocar cualquiera de los remedios permitidos por el párrafo 18 de la presente.

En su nota denegatoria el Registrador expuso las siguientes razones para denegar la inscripción:

De tratarse de una mera obligación contraída por el deudor, no sería inscribible por efecto de los artículos 41 y 53.1 de la Ley y su Reglamento Hipotecario, respectivamente. De tratarse de una cláusula con trascendencia real, afectaría directamente la facultad de enajenar del dueño, elemento esencial del derecho de propiedad, con vista de sus propios términos y cómo éstos han sido interpretados en otras jurisdicciones, y no poder tener acceso al Registro, por no expresar causa alguna que justifique tal limitación quedando totalmente a la irrestricta voluntad del acreedor declarar vencida la deuda, quien no está obligado a aceptar la venta o concesión de algún interés, no importa qué garantía pueda ofrecerle el adquirente y por estar prohibida la inscripción de dicha restricción por el Artículo 84 de la Ley Hipotecaria y declarada ineficiencia [*sic*] por el Artículo 158 tercero de la misma ley. La deuda es declarada vencida no sólo si la finca es vendida sin el consentimiento por escrito del acreedor sino por la concesión de un "interés en la misma" concepto impreciso cuya publicidad registral violenta el principio hipotecario de especialidad que informa, entre otros, el artículo 87.2 de la Ley Hipotecaria; al igual que la primera excepción, puesto que sugiere que una segunda hipoteca, y por tanto si la finca es transferida por su ejecución, no causaría el vencimiento acelerado de la deuda. Se alude al título 12 del Código de los Estados Unidos, secciones 1461 y siguientes y al Título 12 de Regulaciones Federales, Sección 545, 8-3, los que permiten dicha cláusula como enervantes de cualquier disposición legal puertorriqueña; pero no aparece de tales leyes y reglamentos la intención del Congreso de los Estados Unidos

de hacerla prevalecer sobre legislación vigente en Puerto Rico y ni siquiera es mandatoria, al respecto que nos ocupa, para los que a su amparo contraten. Caguas, a 17 de agosto de 1981.

Las recurrentes señalan que el Registrador cometió tres errores, a saber:

(1) Erró al añadir nuevos motivos legales para su denegatoria a los mencionados en su notificación de calificación.

(2) Erró al determinar que la cláusula de aceleración no tiene acceso al Registro por constituir una violación al Art. 84 de la Ley Hipotecaria de 1979 (30 L.P.R.A. sec. 2305 y ss.).

(3) Erró al determinar que por razón de la cláusula de Supremacía de la Constitución de Estados Unidos, Art. VI, cláusula 2, las asociaciones federales de ahorro y préstamos están inmunes a toda legislación o reglamentación local que prohíba, limite, restrinja, infrinja o en cualquier otra forma interfiera con los negocios y actividades autorizados a tales asociaciones mediante ley o reglamentación federal.

▮ En su denegatoria el Registrador no determina cuál es la naturaleza de la cláusula, sino que deniega su inscripción por razones alternativas. Nos parece que esta determinación es esencial porque de constituir una obligación personal no sería inscribible, ya que como norma general los derechos personales no son inscribibles. ([1])

▮ La cláusula de aceleración impone una penalidad al deudor hipotecario que transfiere la propiedad sin el consentimiento previo por escrito del acreedor. La penalidad consiste en la aceleración del vencimiento de la deuda. Ven-

---

([1]) Existen ciertas excepciones a esta norma, v.g., el contrato de arrendamiento de bienes inmuebles por un período de seis años o más, o cuando se pacta su inscripción; el contrato de opción, cuando se cumplan ciertos requisitos que exige la ley. Art. 38 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2201.

cida la deuda, si no es pagada, el acreedor puede pedir la ejecución del bien hipotecado para satisfacer su crédito. Ello demuestra que se trata de una obligación con trascendencia real y no una mera obligación personal. Su incumplimiento pone en función la garantía hipotecaria.

Probablemente la idea de que la cláusula de aceleración constituye un derecho personal surge de la particularidad de que en la hipoteca, a diferencia de la mayoría de los gravámenes reales, hay una relación compleja de dos elementos: un crédito o débito personal y un derecho o gravamen real. Roca Sastre y Roca-Sastre Muncunill, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 1, pág. 411. Sin embargo, al examinar la cláusula vemos que su incumplimiento repercute sobre la garantía real. No obstante, la determinación de que la cláusula de aceleración tiene trascendencia real no es suficiente para resolver que es inscribible, pues hay que determinar si es válida.

El Registrador entiende que es nula porque constituye una prohibición de enajenar no permitida por el Art. 84 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2305.[2] El análisis del Registrador es que de no haber aceptación previa para la

---

[2] Dicho Art. 84 dispone:

"Sec. 2305. —*Prohibiciones de disponer o enajenar; normas*

"Las prohibiciones de disponer o enajenar se harán constar en el Registro de la Propiedad y producirán efecto con arreglo a las siguientes normas:

"1ra. Las establecidas por la ley, que sin expresa declaración judicial o administrativa, tengan plena eficacia jurídica, no necesitarán inscripción separada y especial y surtirán sus efectos como limitaciones legales del dominio.

"2da. Las que deban su origen inmediato a alguna resolución judicial o administrativa serán objeto de anotación preventiva.

"3ra. Las impuestas por el testador o donante en actos o disposiciones de última voluntad, capitulaciones matrimoniales, donaciones y demás actos a título gratuito, serán inscribibles siempre que la legislación vigente reconozca su validez.

"4ta. Las prohibiciones de disponer que no tengan su origen en actos o contratos de los comprendidos en los números anteriores, no tendrán acceso al Registro, sin perjuicio de que mediante hipoteca o cualquiera otra forma de garantía real se asegure su cumplimiento."

venta o transferencia, el comprador se encuentra con una deuda vencida y en una situación que unilateralmente controla el acreedor. Entiende que ello va en contra del principio que establece que la hipoteca no impide al dueño de la cosa gravada el ejercicio de sus facultades dispositivas respecto a ésta. Este principio que se remonta al Derecho romano ha pasado al Derecho moderno y por ello se ha declarado que es nulo todo pacto a favor de un acreedor hipotecario de no volver a hipotecar. Roca Sastre, *op. cit.*, pág. 410.

La controversia de si la cláusula de aceleración constituye una prohibición de enajenar ha sido objeto de gran debate. En los Estados Unidos la cláusula ha sido objeto de legislación y de interpretación por los tribunales estatales y federales. L. Kreicher, *Much Ado About Due-on-Sale: Avoiding the Tempest in New York*, 10 Hofstra L. Rev. 1229 (1982). Éstos, de forma uniforme, han permitido el uso de la cláusula cuando se utiliza con el propósito de que el acreedor pueda asegurarse de que el nuevo adquirente es una persona solvente y que puede mantener la propiedad en buenas condiciones. P. Ashley, *Use of "Due-On" Clauses to Gain Collateral Benefits: A Commonsense Defense*, 10 Tulsa L.J. 590 (1975). Esta uniformidad no existe, sin embargo, cuando se utiliza la cláusula para obtener el beneficio de un aumento en los intereses del préstamo hipotecario. Ashley, *op. cit.*, pág. 592. Un mayor número de tribunales comenzó a prohibir el uso de la cláusula de aceleración para obtener un aumento en los intereses porque limitaba irrazonablemente las enajenaciones de los bienes hipotecados. Véase, Comment, *Due-on-Sale Clause not a Restraint on Alienation of Property*, 59 Wash. Univ. L.Q. 1047 (1981).

El uso de la cláusula para obtener mayores intereses surge como consecuencia de la inflación que comenzó a sufrir la economía a mediados de la década de 1960 y que aún permanece. Las asociaciones de ahorro y préstamo, como son las recurrentes, obtienen los fondos para sus

préstamos hipotecarios de certificados y cuentas de ahorro a corto plazo. Al tenerlos que invertir en préstamos a largo plazo con un interés fijo sufren pérdidas, porque para atraer depositantes tienen que pagar intereses cada vez más altos. *Fidelity Federal Sav. & Loan Assn.* v. *De la Cuesta,* supra. La cláusula *due-on-sale* ayuda a aliviar la situación permitiendo que la institución financiera aumente los intereses de los préstamos hipotecarios a la tasa de interés prevaleciente en el mercado. *Fidelity Federal Sav. & Loan Assn.,* supra, pág. 685.

En 1976 la Federal Home Loan Bank Board, organismo que reglamenta y supervisa las asociaciones federales de ahorro y préstamo, preocupada por las pérdidas millonarias que estaban sufriendo estas asociaciones y estimando que estas pérdidas aumentarían considerablemente si los estados continuaban imponiendo limitaciones al uso de la cláusula para obtener aumento en los intereses, aprobó la siguiente reglamentación que en su parte pertinente establece:

> An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as [otherwise] provided in . . . this section . . . , exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract. 12 C.F.R. sec. 545.8-3(f) (1982).

A pesar de esta reglamentación la Corte de Apelaciones de California en *de la Cuesta* v. *Fidelity Federal Sav. & Loan,* 121 Cal. App. 3d 328, 175 Cal. Rptr. 467 (1981), resolvió que ésta no desplazaba el derecho estatal con relación a la cláusula *due-on-sale,* ya que por tratarse de regla-

mentación de una agencia administrativa no cumplía con el requisito de intención congresional para que aplicase la doctrina de desplazamiento, por lo que el estado de California podía prohibir su ejercicio a menos que la institución prestataria pudiera demostrar que la ejecución de la cláusula era necesaria para proteger su garantía.[3] La Corte Suprema de California se negó a revisar.

El Tribunal Supremo federal, tomando en consideración que la mayoría de los tribunales que habían considerado la controversia, a diferencia de la Corte de Apelaciones de California, había resuelto que la reglamentación de la Junta desplazaba la reglamentación estatal de las asociaciones de ahorro y préstamo federales, decidió revisar y revocó la decisión de California. Resolvió que la reglamentación de la Junta sobre la cláusula *due-on-sale* desplazaba cualquier limitación estatal de dicha cláusula que fuera conflictiva con ella. *Fidelity Federal Sav. & Loan Assn.*, supra. El fundamento de la decisión fue que la reglamentación de una agencia federal tiene el mismo efecto de desplazamiento que un estatuto federal, cuando existe la intención de desplazar. Determinó que tanto el preámbulo de la reglamentación como su texto expresaban la intención inequívoca de desplazar el derecho estatal para que el ejercicio de la cláusula *due-on-sale* fuera gobernado exclusivamente por reglamentación de la Junta. *Fidelity Federal Sav. & Loan Assn.*, supra, pág. 678.

■ Esta decisión del Tribunal Supremo federal nos obliga a resolver que las cláusulas de aceleración, conocidas popularmente como cláusulas *due-on-sale*, incluidas en las escrituras de hipoteca que los recurrentes presentaron al Registro de la Propiedad, son válidas y nos está vedado imponer limitaciones que conflijan con la reglamentación federal.

---

[3] Este requisito para el ejercicio de la cláusula se conoce como doctrina de *Wellenkamp*, porque fue expuesta por primera vez en *Wellenkamp* v. *Bank of America*, 21 Cal. 3d 943, 582 P.2d 970 (1978).

*Por los fundamentos anteriores se revocarán las notas recurridas.*

El Juez Asociado Señor Negrón García no intervino.