[Civ. No. 47918. First Dist., Div. One. June 1, 1981.]

STANLEY E. PANKO et al., Plaintiffs and Appellants, v.
PAN AMERICAN FEDERAL SAVINGS AND LOAN
ASSOCIATION et al., Defendants and Respondents.

COUNSEL

Donald M. Ahlbach, Timothy L. Newlove, Fred Crane and Mark A. Hiller for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, Joseph M. O'Heron, Deputy Attorney General, Richard Mosk, John R. Hetland, Charles A. Hansen and W. Gary Kurtz as Amici Curiae on behalf of Plaintiffs and Appellants.

W. M. Pinney, Jr., J. T. Larson and Robert A. Seligson for Defendants and Respondents.

Hansen, Bridgett, Marcus, Vlahos & Stromberg, Michael A. Duncheon, Henry L. Judy, Maud Mater, Gary S. Smuckler, Marilyn E. Nathanson, Silver, Freedman, Housley, Taff & Goldberg, Daniel J. Goldberg, William T. Nachbaur and Matthew G. Ash as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**RACANELLI, P. J.**—In this appeal we address the question whether the rule announced by our Supreme Court in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970] applies with equal force to a federally chartered savings and loan association. We hold that *Wellenkamp* applies; accordingly, we reverse the judgment.

### Facts

Joseph and Sandra Karp were owners of a commercial building in San Mateo. In November 1977 they refinanced the property, obtaining a loan from Pan American Federal Savings and Loan Association for

$161,000, bearing interest at the rate of 10 percent per annum, secured by a deed of trust.[1] The deed of trust contained a standard due-on-sale clause providing for accelerated payment in the event of sale.

In June 1978 the Karps sold the property to plaintiffs, Stanley Panko and George Sinclair, who took title to the property "subject to" the Pan American deed of trust. Plaintiffs tendered a timely monthly payment due to Pan American in July 1978, but Pan American declined to accept it. Acting under the authority of the due-on-sale clause, Pan American demanded full payment of the loan balance.

On August 18, 1978, Pan American recorded a notice of default citing the Karps' "failure to pay Interest and Principal payments." On November 21, 1978, plaintiffs filed a complaint for declaratory and injunctive relief seeking to enjoin Pan American from enforcing the due-on-sale clause. Thereafter, Pan American moved for summary judgment on the ground that federal statutes and regulations governing federally chartered savings and loan associations preempted California law and permitted enforcement of the due-on-sale clause. The trial court granted the motion and dismissed the action. This appeal ensued.[2]

### Background

In recent years the validity of due-on-sale clauses has been a matter of considerable controversy in state and federal courts. In California our Supreme Court has determined that enforcement of a due-on-sale clause upon occurrence of an outright sale constitutes an unreasonable restraint on alienation "unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." (*Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at p. 953.) The court's decision was grounded on Civil Code section 711,[3] foreshadowed by two earlier interpretations of that

---

[1]The refinancing was part of an option agreement between the Karps and plaintiffs. An abstract of option agreement was recorded on November 13, 1977. A termination of option agreement was recorded on December 2, 1977, as a loan condition imposed by Pan American. An abstract of option agreement was rerecorded on December 5, 1977.

[2]We are advised that during the pendency of this appeal, Pan American has converted to a state-chartered savings and loan association. Since at the time of the events below Pan American was federally chartered, the central issue is not subject to a claim of mootness.

[3]Section 711 of the Civil Code provides: "Conditions restraining alienation, when repugnant to the interest created, are void."

statute. (See *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169] [due-on-sale clause not automatically enforceable upon execution of installment sale contract]; *LaSala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal. Rptr. 849, 489 P.2d 1113] [acceleration clause not automatically enforceable upon creation of junior encumbrance].)

Here, Pan American concedes that it can make no showing of an impairment to its security or risk of default as a result of the outright sale of the property to plaintiffs. Consequently, under California law the due-on-sale clause contained in the deed of trust herein would not be enforceable.[4] Pan American, a federally chartered savings and loan association, contends that it can not be bound by California law since it is exclusively governed by regulations of the Federal Home Loan Bank Board (Board) which preempt conflicting state laws.

In 1933 the Home Owners' Loan Act (12 U.S.C. §§ 1461-1468) was enacted by Congress creating the Board and authorizing the establishment of federal savings and loan associations. While the associations are specifically empowered to extend real estate loans (12 U.S.C. § 1464 (c)(1)(B) and (c)(2)(A)), the statute is silent with respect to due-on-sale clauses or other loan details.

The Board is statutorily authorized to promulgate regulations[5] and has shown no reluctance to do so. (See 12 C.F.R. §§ 541-546.) The first specific mention of due-on-sale clauses, however, did not appear until a regulation was enacted, effective July 1, 1976, providing as follows: "An association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument

---

[4] We note that in *Wellenkamp* the property was an owner-occupied single family dwelling, whereas here the property is investment commercial property. While we are aware that a similar question is presently pending before the California Supreme Court (*Dawn Investment Co.* v. *Superior Court* (L.A. 31413) hg. granted Apr. 29, 1981), we perceive no sound reasons to now restrict the *Wellenkamp* doctrine exclusively to residential property.

[5] "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', or 'Federal mutual savings banks' (but only in the case of institutions which, prior to conversion, were State mutual savings banks located in States which authorize the chartering of State mutual savings banks, provided such conversion is not in contravention of State law), and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States." (12 U.S.C. § 1464 (a)(1).)

whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as provided in paragraph (g) of this section with respect to loans made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract." (12 C.F.R. § 545.6-11 (f), amended and recodified at § 545.8-3 (f) (1980).)

The pivotal question to be decided is whether the federal regulation overrides state law embodied in California Civil Code section 711, as interpreted in *Wellenkamp.*

### *Federal Preemption*

The preemption doctrine arises under the supremacy clause of the federal Constitution which states: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." (U.S. Const., art. VI, cl. 2.) But the enumerated powers of the federal government are expressly limited: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." (U.S. Const., Amend. X.) The United States Supreme Court has exhibited considerable restraint in finding federal preemption of state law by requiring either "such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] . . . evidence of a congressional design to preempt the field." (*Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 141 [10 L.Ed.2d 248, 256, 83 S.Ct. 1210]; accord *People* v. *Conklin* (1974) 12 Cal.3d 259, 264 [114 Cal.Rptr. 241, 522 P.2d 1049], app. dism. 419 U.S. 1064 [42 L.Ed.2d 661, 95 S.Ct. 652].)

With reference to congressional intent, the United States Supreme Court has declared that a state regulation exercising the state's "historic police powers" is not displaced by federal law "unless that was the clear and manifest purpose of Congress." (*Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519, 525 [51 L.Ed.2d 604, 614, 97 S.Ct. 1305]; *Rice* v.

*Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230 [91 L.Ed. 1447, 1459, 67 S.Ct. 1146]; see *Greater Westchester Homeowners Assn.* v. *City of Los Angeles* (1979) 26 Cal.3d 86, 93-94 [160 Cal.Rptr. 733, 603 P.2d 1329].) Counsel have not cited nor has our own research disclosed any reported evidence of a clear congressional mandate that federal law shall control the subject matter herein. While the Congress has unequivocally expressed its preemptive design in relation to specific areas of savings and loan association activities,[6] the Home Owners' Loan Act makes no reference to the subject of due-on-sale clauses.

It is clear that the Board has manifested its unqualified intention that the adopted regulations and implementing policy relating to due-on-sale clauses shall occupy a preemptive position over conflicting state law provisions.[7] Such expression of administrative intent was found controlling in *Glendale Fed. Sav. & Loan Ass'n.* v. *Fox* (C.D.Cal. 1978) 459 F.Supp. 903, judgment entered (1979) 481 F.Supp. 616, appeal pending (9th Cir. 1979). But we cannot equate the *Board's* expression of intent with the requisite congressional intent since the ultimate question to be answered is "whether *Congress* has ... ordained that the state regulation shall yield." (*Florida Avocado Growers* v. *Paul, supra,* 373 U.S. at p. 146 [10 L.Ed.2d at p. 259]; italics added.)

But despite the lack of express congressional design, federal law by implication may operate to the exclusion of state law "where compliance with both federal and state regulations is a physical impossibility" or where there is an "impossiblity of dual compliance ... resulting in ...an inevitable collision between the two schemes of regulation, ..."

---

[6]The Home Owners' Loan Act specifically provides that federal savings and loan associations are exempt from state limitations on the number of branch offices (12 U.S. C. § 1464(a)(1)); however, associations which were formerly state-chartered banks are not exempt from more stringent state laws on neighborhood discrimination or consumer credit protection. (*Ibid.*) Further, federal savings and loan associations are exempt from state taxation greater than that imposed on local financing institutions. (*Id.,* at § 1464(h).)

[7]That intent is expressed in the following language: "Finally, it was and is the Board's intent to have ... due-on-sale practices of Federal associations governed exclusively by Federal law. Therefore, ... exercise of due-on-sale clauses by Federal associations shall be governed and controlled solely by § 545.6-11 and the Board's new Statement of Policy. Federal associations shall not be bound by or subject to any conflicting State law which imposes different ... due-on-sale requirements, nor shall Federal associations attempt to ... avoid the limitations on the exercise of due-on-sale clauses delineated in § 545.6-11(g) on the ground that such ... avoidance of limitations is permissible under State law." (Preamble to 12 C.F.R. § 545.6-11, 41 Fed.Reg. 18287 (May 3, 1976).)

(*Florida Avocado Growers* v. *Paul, supra*, 373 U.S. at pp. 142-143 [10 L.Ed.2d at p. 257].)

In an early case a federal district court—confronted with the question whether a federally chartered savings and loan association was required to obtain a state certificate to transact business in the state —held in favor of federal preemption reasoning that: "The [Home Loan Bank] Board has adopted comprehensive rules and regulations concerning the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." (*People, etc.* v. *Coast Federal Sav. & Loan Ass'n.* (S.D.Cal. 1951) 98 F.Supp. 311, 316.) This broad declaration of lifetime supremacy has been cited with approval in a number of subsequent decisions uniformly holding that state law may not regulate or otherwise interfere with the internal affairs of federal savings and loan associations. (See e.g. *Conference of Federal Sav. & Loan Ass'ns* v. *Stein* (9th Cir. 1979) 604 F.2d 1256, affd. 445 U.S. 921 [63 L.Ed.2d 754, 100 S.Ct. 1304] [proceedings for credit discrimination]; *Kupiec* v. *Republic Federal Savings & Loan Ass'n* (7th Cir. 1975) 512 F.2d 147, 150 [use of membership records]; *Meyers* v. *Beverly Hills Federal Savings & Loan Ass'n* (9th Cir. 1974) 499 F.2d 1145, 1147 [prepayment penalties]; *Rettig* v. *Arlington Hts. Fed. Sav. & Loan Ass'n* (N.D.Ill. 1975) 405 F.Supp. 819, 823 [fiduciary obligations of directors and officers]; *City Federal Savings & Loan Ass'n* v. *Crowley* (E.D.Wisc. 1975) 393 F.Supp. 644, 655 [fees received by directors and officers]; *Kaski* v. *First Fed. S & L Ass'n of Madison* (1976) 72 Wis.2d 132 [240 N.W.2d 367] [interest rate escalation]; *Sears* v. *First Federal Savings and L. Ass'n of Chicago* (1971) 1 Ill. App.3d 621 [275 N.E.2d 300] [trust accounts for taxes and insurance]; see also *Derenco, Inc.* v. *Benj. Franklin Fed. Sav. & Loan Ass'n* (1978) 281 Ore. 533 [577 P.2d 477], cert. den. 439 U.S. 1051 [58 L.Ed.2d 712, 99 S.Ct. 733].)

Although that general proposition reflects a correct statement of law, we are not persuaded that existing state law pertaining to the exercise of due-on-sale clauses in any way infringes upon or is otherwise incompatible with the regulation or operation of the internal affairs of federal savings and loan associations. (See *Holiday Acres No. 3* v. *Midwest Fed. Etc.* (Minn. 1981) 308 N.W.2d 471.)[8] The federal regulation merely authorizes and does not compel savings and loan associations to

---

[8]Although the Minnesota Supreme Court declined to extend a state statute governing residential property to commercial property, we find that court's holding on the separate question of preemption to be no less persuasive.

include a due-on-sale clause in their loan contracts and to exercise their rights thereunder. (*Id.*, at pp. 478-479.) As noted, California law imposes a more stringent requirement enforcing a due-on-sale clause only upon a showing that the lender's security will be either impaired or subjected to risk of default as a consequence of the transfer. But the federal loan association is not faced with physical impossibility in complying with the two regulatory schemes. Instead, the federal regulation leaves the rights and remedies of the parties intact under the terms of the loan contract. Thus, enforcement of the due-on-sale clause rests upon conventional contract and property principles under state law. (*Id.*, at p. 477.) There is no "inevitable collision" between the two regulations. (*Florida Avocado Growers* v. *Paul, supra*, 373 U.S. at p. 143 [10 L.Ed.2d at p. 257].)

The Federal Home Loan Mortgage Corporation (FHLMC), appearing as amicus curiae, urges a finding of federal preemption based on a claim of need for national uniformity of loan practices and instruments.[9] In response, we rely upon the persuasive language of the Minnesota Supreme Court: "If this national interest were indeed an important policy, it seems that the inclusion of such clauses would be mandated rather than permitted." (*Holiday Acres No. 3* v. *Midwest Fed. Etc., supra*, 308 N.W.2d at p. 479.) Nor, we think, would application of state law to the exercise of due-on-sale clauses interfere with the federal objectives embodied in the Home Owners' Loan Act. That legislation was enacted during a period of severe economic depression in order to assist financially distressed homeowners. It would be "unreasonable, and ironic, to hold now that the Congress intended [the act] to justify the removal of homeowners' protections under state law." (*Id.*, at p. 479.)

Our conclusion finds further support in the particular provisions of the deed of trust employed herein. The form of instrument is apparently

---

[9]Briefly stated, the argument is made that due-on-sale clauses, by keeping the life of a mortgage relatively short, increase the lenders' yield and thereby promote the national interest by keeping overall interest rates down. Further, by providing a higher yield and a rapid return of capital to the lenders, due-on-sale clauses render the loans marketable in the secondary mortgage market, thereby attracting new funds to the mortgage market and, in turn, again keeping interest rates down. FHLMC, as purchaser of conventional mortages, will purchase only those mortgages using the standardized FHLMC/FNMA loan instrument employed here.

one promulgated by the FHLMC itself; its use is a precondition to purchase of the mortgage by FHLMC. The trust instrument contains so-called "uniform" and "nonuniform" covenants. The uniform covenants are intended for nationwide use while the nonuniform covenants are tailored to particular state mortgage requirements.[10] For example, the "nonuniform" covenants employed herein include California statutory requirements regarding notice (Civ. Code, § 2924b), reinstatement (Civ. Code, § 2924c) and the furnishing of a statement of obligation (Civ. Code, § 2943).

Included in the "uniform" covenants found in paragraph 15 is the express proviso that: "*This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Deed of Trust or Note conflicts with applicable law, such conflict shall not affect other provisions.…" (Italics added.) We believe such language expresses an unmistakable intention that state law shall govern the interpretation, validity and enforcement of the loan-security instrument.

## Waiver

◼ Notwithstanding the relevant federal regulation, federal savings and loan associations are authorized to waive their rights under the due-on-sale clause.[11] Thus, it has been held that where a federal agency contracts with a private individual and the contract provides that state law governs the contract, state law will apply even in the face of general federal preemption. (*United States* v. *Stewart* (9th Cir. 1975) 523 F.2d 1070 [California's antideficiency judgment statute controls where trust deed provided for interpretation under California law]; see *United*

---

[10]Paragraph 15 of the deed of trust provides: "This form deed of trust combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property. This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or Note conflicts with applicable law, such conflict shall not affect other provisions.…"

[11]Under the Board's statement of policy, savings and loan associations are empowered to waive their rights under the due-on-sale clause: "The Board believes there may be (in addition to the circumstance prescribed in § 545.8-3(g) in which exercise of a due-on-sale clause is prohibited) situations in which it will be appropriate for a Federal association to waive its contractural right to accelerate a loan. Those situations include transfer of title to members of the borrower's immediate family, including a former spouse in connection with a divorce, who occupy or will occupy the property (to the extent not covered by § 545.8-3(g)). Associations also should consider waiving, in cases of extreme hardship to the existing borrower, any right to require an increase in interest rate under a due-on-sale clause." (12 C.F.R. § 556.9(c).)

*States* v. *Yazell* (1966) 382 U.S. 341, 353 [15 L.Ed.2d 404, 410-411, 86 S.Ct. 500].) Since the subject deed of trust contains a similar provision invoking the "law of the jurisdiction in which the property is situated" in construing that instrument, we conclude that Pan American Federal Savings and Loan Association has effectively waived any claim of federal preemption.

In conclusion, we hold that California law is not preempted by virtue of the relevant federal regulation. Therefore, we reverse the judgment and remand for further proceedings consistent with the views expressed herein.

Elkington, J., and Grodin, J., concurred.

A petition for a rehearing was denied June 29, 1981, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied August 19, 1981. Mosk, J., did not participate therein. Richardson, J., was of the opinion that the petition should be granted.