[L.A. No. 31413. Feb. 4, 1982.]

DAWN INVESTMENT CO., INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
EDITH BECK et al., Real Parties in Interest.

**696**

COUNSEL

Saul S. Kreshek and Alex J. Rose for Petitioners.

Hill, Farrer & Burrill, Jack R. White, Steven W. Bacon, Wm. Harol Borthwick, Almon B. McCallum, Loring E. Tocchini, McKenna, Conner & Cuneo, Aaron M. Peck, Sara J. Smith and C. Steven McMurray as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Mulvey & Mulvey, Michelle Mulvey and Bernard M. Mulvey for Real Parties in Interest.

Dudley Gray, John R. Hetland, Charles A. Hansen and Fred Crane as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

BROUSSARD, J.—*Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], held that lender enforcement of a due-on-sale clause, contained in a deed of trust or promissory note secured by real property, constitutes an unreasonable restraint on alienation unless the lender can demonstrate that enforcement is reasonably necessary to protect against the impairment of security or risk of default. In the instant case we conclude that the *Wellenkamp* rule applies to noninstitutional lenders and to commercial property.

In March 1977, petitioners[1] sold a 16-unit apartment house to real parties in interest Edith and Don Beck, and as part of the purchase price received a note for $34,000 secured by a second deed of trust on the property. The promissory note and the deed of trust contained a typed due-on-sale clause: "It is covenanted and agreed, by and between the Trustor and the Beneficiary herein, that in the event of a sale, transfer or change of ownership of title to the property herein described, then and in that event, the unpaid balance of principal and interest due on the Note secured hereby, shall at the option of the holder hereof, become immediately due and payable."

In March 1980, the Becks transferred the real property to real parties in interest Shafi Babu-Khan, Calliope Babu-Khan and Nazir U. Khaja, taking back an all inclusive deed of trust to secure an indebtedness of $455,000. Petitioners refused to accept installment payments on the 1977 note and notified the other parties of their election to accelerate under the terms of the note and the deed of trust.

After notice of default and election to sell, real parties in interest sought declaratory relief and an injunction in respondent court. Respondent granted a preliminary injunction enjoining sale upon the payment of installments, and petitioners commenced this mandate proceeding to

---

[1]Petitioner Dawn Investment Co., Inc., is a corporation wholly owned by Don and Marla Robinson, husband and wife. The corporation owns real property and four notes secured by real property. The other petitioner is Don Robinson's mother.

compel vacation of the injunction and entry of an order denying, application for preliminary injunction.

## Pre-wellenkamp Law

Civil Code section 711 provides: "Conditions restraining alienation, when repugnant to the interest created, are void." In *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 316-317 [38 Cal.Rptr. 505, 392 P.2d 265], the court pointed out that several interests had been recognized as justifying reasonable restraints on alienation and concluded that the code section prohibited only unreasonable restraints on alienation. While the case held that a due-on-sale clause in that case was a reasonable restraint, the case did not present the usual situation involving a deed of trust with a due-on-sale clause. In connection with a number of loans made by a bank, the borrowers agreed not to convey or hypothecate certain owned property. The borrowers sold one of the properties, and it was held that the agreement which had been recorded constituted an equitable mortgage, that the bank could accelerate the debt as provided in the agreement, and that it was not unreasonable to condition continued extension of credit on the borrowers' continued ownership of the property.

In *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 877-882 [97 Cal.Rptr. 849, 489 P.2d 1113], we reaffirmed the rule that section 711 prohibits only unreasonable restraints on alienation. It was held that enforcement of a due-on-encumbrance clause involved a significant restraint on alienation such as to preclude enforcement unless the lender could show that enforcement was reasonably necessary to protect its security.

In *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629, 634 et seq. [116 Cal.Rptr. 633, 526 P.2d 1169], the property was sold by an installment contract, and the court held that enforcement of a clause making principal due on sale by installment contract would be precluded unless enforcement was necessary to protect the lender's security. The court reasoned that the reasonableness of the restraint depends upon a balancing of the quantum of restraint, the practical effect on alienation resulting from enforcement, against the justification for the restraint. The court concluded that enforcement of a clause making principal due on execution of an installment land contract would "virtually eliminate alienation" by such contracts where the property was subject to deed of trust and the note was substantial. (12 Cal.3d at p.

637.) Both *La Sala* and *Tucker* distinguished the outright sale of property.

## WELLENKAMP

In *Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d 943, we examined the quantum of restraint imposed by enforcement of a due-on-sale clause after transfer of the property by outright sale. It was pointed out that in "times of inflation, when money is 'tight' and funds available for real estate loans are in short supply, new financing may be difficult, if not impossible to obtain." If the lender is permitted to accelerate the note, transfer of the property may be prohibited entirely, because the buyer will be unable to substitute a new loan and the seller will not receive sufficient funds to discharge the loan when the balance due is substantial. Even if the lender is willing to permit assumption at an increased interest rate, the buyer may insist on a reduction in price with the seller losing part of his equity interest or losing the sale altogether. (21 Cal.3d at pp. 950-951.) In this connection, the court noted the state policy that home equities are to be protected and conserved. (Health & Saf. Code, § 50007.) (21 Cal.3d at p. 950, fn. 6.)

The court rejected the offered justifications for the restraint on alienation. The fact of sale does not necessarily increase the risk of waste or default because the buyer may make a substantial down payment providing incentive to maintain the property and there is no reason to assume that the buyer is a worse credit risk than the seller. In the absence of a showing by the lender of increased risk, the lender should not be able to enforce the due-on-sale clause on the theory that such risk exists. (21 Cal.3d at pp. 951-952.) In a footnote to the latter statement, the court limited its holding to the institutional lender. "We express no present opinion on the question whether a private lender, including the vendor who takes back secondary financing, has interests which might inherently justify automatic enforcement of a due-on clause in his favor upon resale." (21 Cal.3d at p. 952, fn. 9.)

Also rejected was the claim that the lender's interest in maintaining its portfolio at current interest rates justifies the restraint. Recognizing that lenders face increasing costs and must pay increasing amounts to depositors for use of funds to make long-term loans, the court reasoned that the clause was not designed to cover this type of business risk, that lenders take into account their projections of future economic conditions in setting interest rates for long-term loans, and that when the projec-

tions prove to be inaccurate, it would be unfair to place the burden of the mistaken projection on property owners exercising *their right to freely alienate property.* (21 Cal.3d at pp. 952-953.)

The court concluded "that a due-on clause contained in a promissory note or deed of trust cannot be enforced upon the occurrence of an outright sale unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." (Fns. omitted.) (21 Cal.3d at p. 953.) Earlier decisions to the contrary were disapproved and overruled. The decision was held applicable to existing loans except where lenders waived enforcement of the clause for modifications prior to the decision's effective date. (21 Cal.3d at pp. 953-954.)

### THE PRIVATE LENDER

As pointed out earlier, *Wellenkamp* expressly left open the question whether a private lender, such as the vendor, has interests which might justify automatic enforcement of a due-on-sale clause. (21 Cal.3d at p. 952, fn. 9.) Comparing the quantum of restraint resulting from automatic enforcement of due-on-sale clauses by private lenders with enforcement by institutional lenders, there are obviously substantial similarities between the two. If the lender is permitted to accelerate the note, the transfer of the property may be prohibited entirely whether the lender is institutional or private, and the purchase price may likewise be adjusted in both situations. Similarly, when existing financing is in whole or in part private rather than institutional, the new purchaser may make a substantial down payment, and there is no substantial reason to assume that he is a worse credit risk than his seller.

Petitioners seek to distinguish *Wellenkamp* on a number of grounds. It is urged that private lenders unlike institutional lenders lack the resources to determine whether the sale will endanger the security. However, many private lenders deal through brokers, and to that extent credit information would ordinarily be available on the same basis as to institutional investors. It has not been shown that credit information is unavailable to other private lenders or that its cost is unreasonable. We are satisfied that availability of credit information is not in itself sufficient to warrant the restraint on alienation resulting from enforcement of *due-on-sale clauses in the absence of a showing of impairment of the security* or an increased risk of default.

Next, it is urged that private financing is ordinarily short-term and that the quantum of restraint resulting from enforcement of the due-on-sale clause is less than that resulting from enforcement when the financing is long-term. Nevertheless, enforcement of the clause when the financing is short-term may still result in a significant restraint on alienation because it may require search for other financial sources during periods of tight money. The test established by *Wellenkamp*, as we have seen, considers the quantum of restraint with the justification for the restraint. While the short-term nature of financing may dilute the quantum of restraint resulting from enforcement of the due-on-sale clause, it also reduces justification for permitting restraint. On balance, the fact that private financing may be short-term does not provide substantial reason to permit the restraint on alienation resulting from enforcement of the due-on-sale clause.

It is also urged that private lenders, unlike institutional lenders, may not spread the risk of loss over numerous loans and therefore should be permitted to automatically enforce the due-on-sale clause. Inability to spread the risk of loss exists whether or not the property is sold, and because we cannot assume that the new purchaser is a worse credit risk than his seller, such inability furnishes no substantial basis to distinguish *Wellenkamp*.

Another difference assertedly justifying automatic enforcement by private lenders is based on reasoning in *Wellenkamp* rejecting the offered justification of the lender's interest in maintaining its loan portfolio at current interest rates. The court rejected the asserted justification on the grounds that lenders making long-term loans should and do take into account projections of future economic conditions and that it would be unjust to place the burdens of the lender's mistaken economic projections upon the property owner exercising his right to freely alienate property. (21 Cal.3d at pp. 952-953.) Unlike the institutional lender, the private lender is not in the business of making loans and is ordinarily not in a position to make projections of economic conditions.

*Wellenkamp* did not reason that economic projections or ability to make projections affected the quantum of restraint; obviously they do not. Rather the context of the discussion was recognition that institutional lenders "face increasing costs of doing business and must pay increasing amounts to depositors for the use of their funds in making

long-term real estate loans as a result of inflation and a competitive money market." (*Ibid.*) The business risk of borrowing short-term and lending long-term is not ordinarily a concern to private investors, and thus the entire discussion, including the portion relating to economic projections, has little, if any, relevance to private lenders. Moreover, whether private lenders are vendors who sought to enhance sale of their property by taking back financing, investors who sought return on their capital, or both vendors and investors, they have the benefit of terms and rates established by available institutional financing in making their sales and investments.[2]

We conclude that no substantial reason has been shown to treat private lenders differently than institutional lenders in respect to the restraint on alienation resulting from enforcement of due-on-sale clauses.

INVESTMENT PROPERTY—BUSINESS, RENTAL AND SPECULATIVE NONPRODUCTIVE PROPERTY

The opinion in *Wellenkamp* does not show whether the property there involved was residential or investment property. While the state policy protecting home equities was mentioned in a footnote (21 Cal.3d, at p. 950, fn. 6), the policy was not relied on by the court in reasoning that enforcement of a due-on-sale clause absent an impairment of security or an increased risk of default constituted an unreasonable restraint on alienation. The reasoning in the body of the opinion was based on owner's equities generally, and not limited to residential equities. Accordingly, the opinion on its face appears applicable to both residential and investment property.

In two recent cases the Court of Appeal concluded that no reason was shown to distinguish between residential and investment property. (*de la Cuesta* v. *Fidelity Fed. Sav. & Loan Assn.* (1981) 121 Cal. App.3d 328, 346-348 [175 Cal.Rptr. 467]; *Panko* v. *Pan American Fed. Sav. & Loan Assn.* (1981) 119 Cal.App.3d 916, 920, fn. 4 [174 Cal.Rptr. 240].)

---

[2]It is also pointed out that adhesion considerations are often present in institutional financing while absent in private financing (see Crane, *Wellenkamp* v. *Bank of America, A Victory for the Consumer?* (1979) 31 Hastings L.J. 275, 303), but the *Wellenkamp* decision is based on the policy against restraints on alienation and not adhesion considerations.

It is urged that because the investor purchases for economic reasons and not for personal reasons, lenders and investors who are both concerned with business considerations should be free to agree to automatically enforceable due-on-sale clauses without regard to the resulting restraint on alienation. Civil Code section 711 prohibiting restraints on alienation does not contain any language warranting an exemption for investment property. In determining the validity of the restraint, the quantum of restraint under *La Sala, Tucker* and *Wellenkamp* must be balanced against the justification for it.

Measuring the quantum of restraint, it is apparent that enforcement of the clause in periods of tight money may preclude sale or require reduction of sale price of investment property just as it does with residential property. While an investor may plan to meet his cost of acquisition and maintenance through potential income, this does not serve to reduce the quantum of restraint. Despite the potential income, the cost of financing a purchase in periods of tight money may be as determinative of the alienability of investment property as it is of residential property.

It is also urged that because the investor ordinarily sells for business reasons rather than personal ones, he is in a better position to defer a sale during periods of tight money. The argument, if accepted, would not show that the quantum of restraint resulting from enforcement of a due-on-sale clause is less for investment than residential property, but to the contrary indicates that the quantum of restraint, if anything, is greater for investment property.

Nor do the investor's business considerations furnish justification for the restraint. Whether the property is residential or investment, the new purchaser may make a substantial down payment, and there is no substantial reason to assume that he is a worse credit risk than his seller. Moreover, the income potential of investment property tends to reduce the importance of the purchaser's creditworthiness. While some investment property loans are based in part on the borrower's management experience, there is no reason to assume that management ability of a purchaser who invests his funds and time in the property and its management will impair the security or increase the risk of default. We are satisfied that enforcement of a due-on-sale clause contained in a note or deed of trust constitutes an unreasonable restraint on alienation in the

absence of a showing of impairment of the security or an increased risk of default due to the purchaser's management ability or other cause.[3]

The alternative writ is discharged and the peremptory writ is denied.

Bird, C. J., Richardson, J., Newman, J., Kaus, J., Tobriner, J.,* and Staniforth, J.,† concurred.

---

[3]*Guild Wineries & Distilleries* v. *Land Dynamics* (1980) 103 Cal.App.3d 966, 977 [163 Cal.Rptr. 348], is distinguishable. In that case, the court concluded there was no unreasonable restraint on alienation on the grounds that the seller obtained an amount of cash nearly equal to the amount of the note, that there was no claim that the seller could not raise the balance of the amount of the note, and that the major asset securing the debt, wine cooperage, was subject to removal and to deterioration if misused or neglected. In the instant case the debt is secured by land and building, and the record does not reflect the amount of cash received by the seller.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

†Assigned by the Chairperson of the Judicial Council.