[Civ. No. 21005. Third Dist. Dec. 15, 1982.]

DEPARTMENT OF VETERANS AFFAIRS,
Plaintiff, Cross-defendant and Respondent, v.
LEON DELL DUERKSEN et al., Defendants,
Cross-complainants and Appellants.

*Assigned by the Chairperson of the Judicial Council.

COUNSEL

Fred Crane and Alan L. Green for Defendants, Cross-complainants and Appellants.

Howell Y. Jackson and H. Dean Stiles for Plaintiff, Cross-defendant and Respondent.

OPINION

**SPARKS, J.**—The central issue here is whether the holding of *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], applies to Cal-Vet contracts. We hold that it does not.

In this case a veteran purchasing a home from the Department of Veterans Affairs (Department) under a Cal-Vet contract seeks to sell the home to another before having paid the contract in full. The Department, while acknowledging that the sale poses no risk to its security interest in the property, claims authority to prevent the sale and accelerate the veteran's debt under his contract. We agree the Department has such authority.

*The Cal-Vet Program*

The Veterans' Farm and Home Purchase Act of 1974 (Act) (Mil. & Vet. Code, § 987.50 et seq.)[1] was enacted "to provide veterans with the opportunity to acquire farms and homes." (§ 987.51.) Under the Act, the Department is empowered to buy farms and homes from their owners and sell the properties back to eligible veterans under long-term installment contracts at a low rate of interest.[2] Since the sale is by installments (§§ 987.69, 987.71), the Department retains legal title to a property until the price has been paid in full. (See *Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 643 [192 P.2d 5].) Funds for the Department's purchases are provided by the public through general obligation bonds. (See, e.g., § 998.001 et seq., § 998.021 et seq., § 998.041 et seq.)

A veteran who seeks a Cal-Vet contract must agree that he or the members of his immediate family will actually reside on the property until it is paid off or sold. (§ 987.60.) If he later wishes to transfer, assign, encumber, lease, let or sublet his property before he has paid the full price, he must first obtain the written consent of the Department. The Department "may give its written con-

---

[1]All further references are to the Military and Veterans Code unless otherwise noted.

[2]The Department's interest rate at the time of trial was 7.85 percent.

sent . . . for good cause shown, subject to the interest of the department and consistent with the purposes" of the Act. (§ 987.73, subd. (a).) In the event of an approved assignment to a person who is not a veteran, that person does not enjoy the special low rate of interest, but pays a higher rate "as fixed by the department . . . ." (§ 987.72.)

Only one farm or home purchased under the Act may be owned by a veteran at any one time. (§ 987.86, subd. (c).) However, a veteran who has paid his contract in full may in certain circumstances be granted a subsequent opportunity to purchase another farm or home under the Act. (§ 987.86, subds. (a), (b), (d), (e).)

If a veteran fails to comply with any of the terms of his contractual obligations the Department may cancel the contract; in such event all payments made to the Department up to that time are forfeited as rental paid for occupancy, and the Department is entitled to take possession of the property. (§ 987.77.)

*The Facts*

Defendant Duerksen entered into a Cal-Vet contract for the purchase of a home on April 14, 1978. The price was $43,000, to be paid in monthly installments of $394. Paragraph 19 of the contract, based on section 987.73, subdivision (a), of the Act, prohibited transfer of the property without the Department's prior written consent; in the event of a transfer without consent, the balance under the contract would become immediately due on the Department's demand.[3] Paragraph 16, based on section 987.77, allowed the Department to cancel the contract and take possession of the property if Duerksen failed to comply with any provision.

On April 29, 1980, Duerksen entered into an installment contract to sell the property to defendant Morrison. The price was $62,000, with $8,000 down and the rest to be paid in monthly installments of $434.50. The interest rate was nine percent. In the contract, Duerksen promised to "make due and timely payments of installments" he still owed the Department under his Cal-Vet contract. At the time, Duerksen owed about $41,000 on the property.

---

[3]Paragraph 19 provided in part: "Neither this Contract, nor the real property described herein, nor Purchaser's interest hereunder, shall be transferred, assigned, encumbered, leased, let or sublet, . . . without the prior written consent of Department until Purchaser has paid therefor in full and has complied with all the terms and conditions hereof. . . . If the property described herein or Purchaser's interest therein is so transferred, assigned, encumbered, leased, let or sublet, optioned or sold, pledged or hypothecated, without prior written consent of Department, such transfer . . . shall be void and of no force or effect whatsoever, and the total unpaid balance under this Contract shall be immediately due and payable upon demand of the Department. . . ."

Morrison was a veteran who at the time of the transfer already held a Cal-Vet contract on another residence.[4] The contract with Morrison was made without informing the Department or obtaining its consent.

On May 15, 1980, the Department learned of the transfer to Morrison. On May 27, it wrote Duerksen demanding full payment of his outstanding balance under paragraph 19 of the contract. It advised him that "Cal-Vet loan contracts are assignable only to eligible California veterans and only by means of application process approved by the Department . . . ."

In August, having received no response, the Department advised Duerksen it would cancel his contract in 30 days unless he complied with all its provisions. It cancelled the contract by letter of September 26.

In October, the Department sued to quiet its title in Duerksen's property. Duerksen and Morrison brought a cross-complaint for declaratory relief. The trial court granted summary judgment for the Department and denied summary judgment for Duerksen and Morrison. We shall affirm.

I

Defendants' primary argument is that the *Wellenkamp* rule applies to this case. (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d 943; see also *Dawn Investment Co.* v. *Superior Court* (1982) 30 Cal.3d 695 [180 Cal.Rptr. 332, 639 P.2d 974]; *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169]; *La Sala* v. *American Sav. and Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265].) *Wellenkamp* held that a lender's enforcement of a "due-on" clause[5] in a note or trust deed constitutes an unreasonable restraint on alienation unless the lender can demonstrate that enforcement is reasonably necessary to protect against the impairment of security or risk of default. (*Wellenkamp, supra,* 21 Cal.3d at p. 953; see also *Dawn Investment Co., supra,* 30 Cal.3d at p. 697.) The Department has conceded the transfer to Morrison does not impair its security or increase the risk of default. Defendants contend the Department therefore may not deny consent to the transfer and accelerate Duerksen's debt by enforcing the "due-on" clause in paragraph 19 of the contract.

[4]Morrison was therefore an ineligible purchaser under section 987.86, subdivision (c). That subdivision provides: "Only one farm or home purchased under this article shall be owned by a veteran or a veteran and the veteran's spouse at any one time under this article."

[5]The *Wellenkamp* court described a due-on clause as "a device commonly used in real property security transactions to provide, at the option of the lender, for acceleration of the maturity of the loan upon the sale, alienation or further encumbering of the real property security." (*Id.,* at p. 946, fn. 1.)

We observe at the outset that the *Wellenkamp* rule is grounded in a statute —Civil Code section 711.[6] It is, of course, within the power of the Legislature to override the general prohibition against restraints on alienation embodied in section 711 and amplified in *Wellenkamp,* by giving the Department statutory authority to restrain alienation in ways an ordinary lender may not. (See *Burum v. State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 585-586 [184 P.2d 505]; *Hetherington* v. *State Personnel Bd.* (1978) 82 Cal.App.3d 582, 593 [147 Cal.Rptr. 300].) The Department contends this is what the Legislature has done in enacting the Act.

Defendants, on the other hand, claim it is equally within the power of the Legislature to impose the constraint of *Wellenkamp* upon the Department, and that it has manifested a clear intent to do so. Defendants base this claim on their reading of a 1978 amendment to section 987.73, subdivision (a). Before being amended, that subdivision provided, ". . . no property sold under the provisions of this article shall, . . . be transferred, assigned, encumbered, leased, let or sublet, . . . without the written consent of the department, until the purchaser has paid therefor in full . . . ." (Stats. 1974, ch. 1477, § 3, p. 3230.) In 1978, this sentence was added: "The department may give its written consent to such transfers, assignments, encumbrances, leasings, lettings or sublettings, . . . for good cause shown, subject to the interest of the department and consistent with the purposes of this article." (Stats. 1978, ch. 925, § 2, p. 2895.)[7] Defendants place great weight on section 4 of the amending legislation, which proclaimed: "It is the intent of the Legislature in enacting this act to provide veterans with substantially the same flexibility with their investments as a person financing his purchase through a commercial lending institution." (Stats. 1978, ch. 925, § 4, p. 2896.)

By characterizing Cal-Vet property an an "investment" and by reciting that veterans shall have "substantially the same flexibility" as commercial bor-

---

[6]Civil Code section 711, enacted in 1872, still provides: "Conditions restraining alienation, when repugnant to the interest created, are void."

[7]Section 987.73, subdivision (a), provides in full: "Except as provided in subdivision (b), the department in each individual case may specify the terms of the contract entered into with the purchaser, but no property sold under the provisions of this article shall, voluntarily or involuntarily, by operation of law or otherwise, be transferred, assigned, encumbered, leased, let or sublet, in whole or in part, nor shall any mobilehome be removed from its original site, except in case of emergency where temporary removal is necessary to avoid potential damage, without the written consent of the department, until the purchaser has paid therefor in full and has complied with all the terms and conditions of this contract of purchase. The department may give its written consent to such transfers, assignments, encumbrances, leasings, lettings or sublettings, or removals, for good cause shown, subject to the interest of the department and consistent with the purposes of this article."

The 1978 amendment was approved by the Governor and filed with the Secretary of State in September 1978, a month after the decision in *Wellenkamp* appeared. The language in the statute, including the statement of intent, however, appears in draft bills pre-dating *Wellenkamp.* (See Sen. Bill No. 119 (1977-1978 Reg. Sess.).)

rowers, section 4 may at first blush seem to be a directive that veterans should enjoy *all* the benefits of property ownership, including the freedom from unreasonable restraints on alienation conferred by Civil Code section 711. Closer analysis, however, compels the conclusion that this cannot have been the intended effect of the 1978 amendment.

Since the inception of the Cal-Vet program in 1921, the program's consistent aim has been to assist veterans in acquiring farms or homes as residences. (See original uncodified act, Stats. 1921, ch. 519, pp. 815-819; 1935 act, Mil. & Vet. Code, § 800 et seq.; 1943 act, Mil. & Vet. Code, § 984 et seq.; see also *Eisley* v. *Mohan, supra,* 31 Cal.2d at p. 644.) The 1974 Act, which is similar to its predecessors in structure and wording, retained that aim when enacted. And the indications are it still does, even after passage of the 1978 amendment defendants find so significant. The stated purpose of the Act remains "to provide veterans with the opportunity to *acquire* farms and homes." (§ 987.51; italics added.) Section 987.60, subdivision (b), still requires the veteran to promise that "he or members of his immediate family will *actually reside* on the property . . . until all payments due the department have been paid or the farm or home is sold, . . . " (Italics added.) Section 987.72, which allows the Department to increase its interest rate in the event of an assignment to a nonveteran, still contains the caveat: "The action of the department in refusing to permit any assignments except as provided in this section is hereby ratified and confirmed, . . . " Further, the proviso in the third paragraph of Article XVI, section 6 of the California Constitution, a proviso added in 1922 to exempt the Cal-Vet program from the constitutional ban on gifts of public money or credit, still reads: ". . . nothing contained in this Constitution shall prohibit the use of State money or credit, in aiding veterans . . . in the *acquisition of, or payments for,* (1) farms or homes, . . . " (Italics added.)

To read the 1978 amendment as sweepingly as defendants desire is to presume that the Legislature has, by adding one sentence to one section, stood the Act on its head. It is to conclude that the Legislature has transformed the Act from a carefully controlled program designed to assist veterans in acquiring residences into a grant of publicly subsidized property which veterans may dispose of virtually as they like, unless the Department can shoulder the heavy burden of proving harm under *Wellenkamp.* We find it impossible to believe the Legislature would have effected such a radical change in such a casual way. At oral argument counsel for the Department suggested that the real purpose of the 1978 amendment was to give the Department explicit, positive authority to consent to the kinds of transfers it was already permitting under what it assumed to be the authority of the old section 987.73 (e.g., transfers after a contract has been paid, transfers to eligible veterans, transfers to a spouse after dissolution of marriage, executions of second trust deeds). This is the most

plausible interpretation of the amendment, and the one we adopt. If our reading is incorrect, we invite the Legislature to clarify the statute.[8]

Given that *Wellenkamp* does not apply, it is easy to see the Department acted properly in cancelling Duerksen's contract. Section 987.73 allows consent to transfers "subject to the interest of the department and consistent with the purposes of" the Act. To permit a transfer in this case would militate against the purposes of the Act. As the Department points out, in these times of high market interest rates, the low rate offered under the Cal-Vet program creates a demand for Cal-Vet contracts exceeding the Department's ability to provide them. The Department depends on early payoffs of existing contracts to provide a continuing source of money to make purchases for new veteran applicants; it also depends on being able to retake the property of veterans who violate their contracts and refuse to pay the accelerated debt. If Duerksen is allowed to transfer his property and escape the obligation to pay it off or give it back, other eligible veterans who have not enjoyed the benefits of the program—and who are willing to follow its ground rules—are deprived.

Distilled to its essence, Duerksen's contention is that he is entitled to reap all the advantages of the Act but suffer none of its detriments. The short answer to that contention is "[h]e who takes the benefit must bear the burden." (Civ. Code, § 3521.)[9]

## II

■ Defendants make a second argument which need not long detain us. They contend that if we validate the Department's cancellation of Duerksen's contract, we still cannot allow the Department both to take back the property

---

[8]This interpretation also avoids two possible constitutional pitfalls. First, if the 1978 amendment confers as broad a benefit as defendants claim, it could arguably come in conflict with Article XVI, section 6 of the California Constitution, which prohibits gifts of public money or credit. (See *Veterans' Welfare Board* v. *Riley* (1922) 188 Cal. 607 [206 P. 631]; *Veterans' Welfare Board* v. *Jordan* (1922) 189 Cal. 124 [208 P. 284, 22 A.L.R. 1515].) Second, it could be argued that the Act has been presented to the voters as one to provide veterans with farms and homes as residences; that to give veterans the power to use their properties as investments is to change the terms of the bonding laws ratified by the voters, and to "repeal" those laws in violation of Article XVI, section 1 of the California Constitution. (See *Veterans of Foreign Wars* v. *State of California* (1974) 36 Cal.App.3d 688 [111 Cal.Rptr. 750]; 60 Ops.Cal.Atty.Gen. 289.1 (1977).)

[9]The Department also argues that Civil Code section 711.5, provides an independent statutory ground to cancel this contract. That section, effective on September 22, 1979, confers upon public entities providing "housing purchase or rehabilitation loans" the authority to deny assumptions by subsequent ineligible purchasers. Defendants contend that this section does not apply to Cal-Vet loans and, in any event, a retroactive application would constitute an unconstitutional interference with their vested rights. Because of our construction of the Act we do not reach these issues.

*and* force the forfeiture of the sums Duerksen has paid under the contract to date.

Section 987.77 of the Act expressly invests the Department with this recourse,[10] and Paragraph 16 of Duerksen's contract incorporates that section's language. The thrust of defendants' position is that section 987.77 establishes an invalid forfeiture. The Department's installment land contract, they argue, is a security device that should be treated the same as a mortgage or trust deed (see *MacFadden* v. *Walker* (1971) 5 Cal.3d 809, 816 [97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1]; *Kudokas* v. *Balkus* (1972) 26 Cal.App.3d 744, 756 [103 Cal.Rptr. 318]); the contract therefore runs afoul of Civil Code section 2889, which voids "[a]ll contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, . . ." The Department's only remedy, they assert, is to foreclose the property by sale, under Code of Civil Procedure section 726. (See Hetland, Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) §§ 3.75, 3.76, pp. 122-126.) Even if the contract cannot be equated with a mortgage, defendants further contend the Department's recovery must be limited to the damages sustained by Duerksen's breach. (Civ. Code, § 3307; see *Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 22-23 [230 P.2d 629, 31 A.L.R.2d 1]; *Kudokas* v. *Balkus, supra,* 26 Cal.App.3d at pp. 752-753.) Defendants also note the general disfavor with which forfeitures are regarded under the Civil Code. (Civ. Code, §§ 2889, 3369, 1442.)

These arguments are of no avail. The simple fact is that the Legislature has, by section 987.77, expressly authorized the Department to force a forfeiture when a veteran breaches his Cal-Vet contract. This section, addressed to the specific needs of both the public and veterans under the Cal-Vet program, prevails over the general scheme of the Civil Code in the present case. ■ "[I]t is a long-standing rule of statutory construction that a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*Hetherington* v. *State Personnel Bd., supra,* 82 Cal.App.3d at p. 593; see also *Burum* v. *State Compensation Ins. Fund, supra,* 30 Cal.2d at pp. 585-586; Civ. Code, § 3534.) ■ The Department has had express power to compel a forfeiture since 1923. (See Stats. 1923, ch. 405, § 7, p. 916.) That power is vital to the Cal-Vet program since it encourages veterans to comply with the terms of their

---

[10]Section 987.77 states in part: "In the event of a failure of a purchaser to comply with any of the terms of his contract of purchase, the department may cancel such contract, and thereupon be released from all obligations, at law or in equity, to convey the property, and the purchaser shall forfeit all right thereto. All payments theretofore made shall be deemed to be rental paid for occupancy. Upon such forfeiture, the department shall take possession of the property covered by such contract, and shall remove all persons and personal property therefrom . . . ."

contracts and, when they do not, gives the Department quick access to the property in order to favor the next veteran with its use.

The judgment is affirmed.

Carr, Acting P. J., and Ford, J,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 16, 1983.

*Assigned by the Chairperson of the Judicial Council.