[Civ. No. 30171. Fourth Dist., Div. Three. Nov. 15, 1983.]

VIOLET ANN LUCAS, Cross-complainant and Respondent, v.
DOSS S. JONES et al., Cross-defendants and Appellants.

## COUNSEL

Best, Best & Krieger, William R. DeWolfe and Michael Grant for Cross-defendants and Appellants.

Musick, Peeler & Garrett, Thomas J. Kelley, Robert M. Zeller and Nicholas A. Cipiti for Cross-complainant and Respondent.

## OPINION

**CROSBY, J.**—Sellers (Jones) sold two parcels of real property in 1973, carrying secondary financing for the buyers. When the buyers transferred the property to subsequent purchasers (Lucas) subject to sellers' loan in

1979, Jones sought to enforce the due-on-sale clause in the promissory note and the deed of trust securing the property. The second sale occurred after the decision in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], where the Supreme Court prohibited automatic enforcement of due-on-sale clauses as unreasonable restraints on alienation, except where security is impaired.[1] In *Wellenkamp,* however, the court declined to express a ". . . present opinion on the question whether a private lender, including the vendor who takes back secondary financing, has interests which might inherently justify automatic enforcement of a due-on clause in his favor upon resale." (*Id.,* at p. 952, fn. 9.)

Lucas cross-complained for injunctive relief to prevent foreclosure under the due-on-sale clause. On January 19, 1982, the trial court applied the *Wellenkamp* rationale and enjoined Jones, private lenders who took back secondary financing, from enforcing the due-on-sale clause. The preliminary injunction also required Lucas to post a bond, keep the payments current, and cure all defaults on the property. Implicit in the court's action was a finding Jones' security was not impaired by the Lucas purchase. Jones appealed.

The trial court's action appeared to be validated almost immediately; on February 4, 1982, the Supreme Court affirmed *Wellenkamp*'s application to private lenders and transfers of commercial property. (*Dawn Investment Co.* v. *Superior Court* (1982) 30 Cal.3d 695 [180 Cal.Rptr. 332, 639 P.2d 974].) But the state policy against enforcement of due-on-sale clauses was short lived. The Garn-St. Germain Depository Institutions Act of 1982[2] (Act) was signed into law on October 15, 1982, and all state legislative and judicial restrictions on enforceability of due-on-sale clauses, except for certain "window period" loans, were preempted.

The Act defines the window period as ". . . the period beginning on the date a State adopted a constitutional provision or statute prohibiting the exercise of due-on-sale clauses, or the date on which the highest court of such State has rendered a decision . . . prohibiting such exercise, and ending on October 15, 1982 . . . ." (12 U.S.C. § 1701j-3(c)(1).) Real property loans originated or assumed, including transfers of the property "subject to" the loan, between the date of state action restricting enforcement of the due-on-sale clause and October 15, 1982, are exempt from the Act and subject to state law until October 15, 1985.[3] The Act does not establish the

---

[1]Civil Code section 711 provides, "Conditions restraining alienation void. Conditions restraining alienation, when repugnant to the interest created, are void."

[2]Public Law No. 97-320, 96 Statutes at Large 1469; 12 United States Code section 1701j-3.

[3]The Act authorizes states to shorten, but not extend, this period. (12 U.S.C. § 1701j-3(c)(1)(A).)

commencement date for any state's window period; this determination was left ". . . to state interpretation and state judicial decision." (48 Fed.Reg. 21555 (May 13, 1983).) There is no question California is a window period state. There is considerable disagreement, however, as to the commencement date of California's window period and whether there is more than one window period.

Lucas argues there is only one window period in California, beginning for all lenders with *Wellenkamp,* and California's prohibition against enforcement of the due-on-sale clause applies to the post-*Wellenkamp* transfer to her. Jones concedes the window period in California opened for institutional lenders in 1978 with *Wellenkamp,* but argues there is a different window period for private lenders which did not open until the *Dawn* decision in 1982. Since Lucas purchased the property before *Dawn,* Jones contends the Act preempts California law and the due-on-sale clause is enforceable.

The dispute resolves to one simple but elusive question. Did *Wellenkamp* lay down a broad general rule against enforcement of due-on-sale clauses or did it only address the commercial lender, leaving other areas to future decision? In other words, did *Dawn* mark an extension of the *Wellenkamp* rule or simply a refusal to create an exception from its purview for private lenders?

The language of *Wellenkamp,* which was obviously crafted without the miraculous prescience which would have been required to anticipate the problem presented here, is equivocal. In its now notorious footnote 9, *Wellenkamp* uses language in consecutive sentences which would support either position: "In the instant case the party seeking enforcement of the due-on-sale clause is an institutional lender. *We limit our holding accordingly. We express no present opinion on the question whether a private lender, including the vendor who takes back secondary financing, has interests which might inherently justify automatic enforcement of a due-on clause in his favor upon resale.*" (I.e., require an exception to the rule of nonenforceability.) (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at p. 952, fn. 9.) The wording of *Dawn* is no more helpful. For example, the lead paragraph of that opinion contains language that would support either notion: "*Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], held that lender enforcement of a due-on-sale clause, contained in a deed of trust or promissory note secured by real property, constitutes an unreasonable restraint on alienation unless the lender can demonstrate that enforcement is reasonably necessary to protect against the impairment of security or risk of default. In the instant case we conclude that the *Wellenkamp* rule applies to noninstitutional lenders and to commercial property." (*Dawn Investment Co.* v. *Superior Court, supra,* 30 Cal.3d at

p. 697.) The first sentence describes the *Wellenkamp* rule in broad terms, but the second, instead of using language which would describe a disinclination to create an exception to the rule, instead speaks in terms of extending its reach.

We have concluded the ambiguous language of the cases will simply not yield a solution. Only by resort to analysis of the respective holdings does a reasonable answer emerge. *Wellenkamp* decided on a limited form of retroactivity for its holding: "given the importance of the stability of real estate titles and the interest in preserving completed real estate financing arrangements, we hold that this decision shall not apply when the lender, prior to the date that this decision becomes final, has either enforced the due-on clause, resulting in sale of the subject property by foreclosure or in discharge of the accelerated debt, or when the lender has waived enforcement of the due-on clause in return for an agreement with the new buyer modifying the existing financing." (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at p. 954.) *Dawn* is silent on the obvious question of retroactivity, however. The Supreme Court could hardly have missed this critical question.

■ We conclude *Dawn*'s conclusion can only mean the court viewed *Wellenkamp* as creating a broad rule against automatic enforceability of due-on-sale clauses and *Dawn* as refusing to create an exception for private lenders. The Supreme Court would surely have addressed the issue of *Dawn*'s own retroactivity if that were not the case. On this subtle but, we believe, well founded distinction, we must conclude the post-*Wellenkamp,* pre-Act transfer to Lucas falls within California's window period.[4] We agree Jones' security was not impaired by the transfer to Lucas. Thus, enforcement of the due-on-sale clause is prohibited. (12 U.S.C. § 1701j-3(c)(2)(B).[5])[6]

---

[4]We agree with *Miranda* v. *Macias* (1983) 141 Cal.App.3d 188 [191 Cal.Rptr. 177] (see fn. 6, *post*) and also "reserve ruling on whether the window was opened by any pre-*Wellenkamp* enactment or judicial decision for a case factually requiring such determination." (*Id.,* at p. 192, fn. 1.)

[5]12 United States Code section 1701j-3(c)(2)(B) provides, "A lender may not exercise its option pursuant to a due-on-sale clause in the case of a transfer of a real property loan which is subject to [subsection (c)] where the transfer occurred prior to October 15, 1982."

[6]After the parties submitted their briefs, Division One of this court published the opinion in *Miranda* v. *Macias, supra,* 141 Cal.App.3d 188 (hg. den. June 29, 1983).). Under remarkably similar facts, the court determined California's window period opened at the latest with *Wellenkamp* and concluded a post-*Wellenkamp,* pre-*Dawn* transfer of real property, subject to a private lender's loan, is within California's window period. (*Id.,* at p. 192.) We have reached the same conclusion but under a different analysis.

Also, the Federal Home Loan Bank Board published interpretations and issued regulations implementing the Act, effective May 10, 1983. (48 Fed.Reg. 21554 et seq. (May 13, 1983); 12 C.F.R. §§ 591.1-591.6.) Federal regulations have the same preemptive effect as federal statutes (*Fidelity Federal Sav. & Loan Assn.* v. *De La Cuesta* (1982) 458 U.S. 141 [73

Order affirmed. Respondent shall recover costs on appeal.

Trotter, P. J., and Sonenshine, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 18, 1984. Grodin, J., was of the opinion that the petition should be granted.

Certiorari denied by the United States Supreme Court, *sub. nom., Jones* v. *Lucas* (1984) — U.S. — [83 L.Ed.2d 34, 105 S.Ct. 87].

L.Ed.2d 664, 102 S.Ct. 3014]). However, the Federal Home Loan Bank Board limited the applicability of these rules ". . . to all federally-chartered and insured depository institutions, all state-chartered and state-insured depository institutions, and all other government or corporate entities who fall within the definition of 'lender' in Pub.L 97-320 section 341(a)(2) [the Act]." (48 Fed.Reg. 21560.) Thus the regulations do not apply to individual lenders like Jones.